Texas & Pacific Railway Company v. D. G. McWain.

Decided November 13, 1909.

1.—**Master and Servant—Negligence of Physician—Selection by Plaintiff—Evidence.**

In a suit by an employee against his employer for damages for maltreatment by physicians, the issue being whether said physicians were selected and employed by the employer or by the employee through the officials of a labor union of which the employee was a member, evidence considered and held to justify the trial court in refusing to instruct a verdict for defendant; and also in submitting the issue of employment as to only one of said physicians although plaintiff's case was predicated upon the negligence of two physicians The error in this respect, if error at all, was one of omission which appellant should have sought to correct by a special charge.

2.—**Same—Medical Treatment—Contract.**

Evidence considered and held sufficient to support a finding that an employer had entered into contract to furnish medical treatment for an employee in case the employee was injured during the employment.

3.—**Same.**

Where there is a contract between an employer and his employees whereby the employer undertakes, in consideration of a monthly deduction from the

employee's wages, to furnish him medical treatment the employer is liable for the negligence of the physicians supplied by him in discharge of such undertaking, notwithstanding he may derive no profit from the deductions thus imposed upon the employees.

Appeal from the District Court of Tarrant County. Tried below before Hon. Irby Dunklin.

*John W. Wray,* for appellant.—Appellant submits as a conclusive proposition to the entire theory of plaintiff's case and to his right to recover and in justification of the request made on the court to charge for the defendant, that drawing every inference that could be drawn in favor of the appellee, yet nevertheless appellant could under no circumstances be held to a greater liability than the exercise of ordinary care in the selection of Dr. Binney and Dr. Gerino. Poling v. San Antonio & A. P. Ry., 75 S. W., 69; Galveston, H. & S. A. Ry. v. Scott, 44 S. W., 589; Southern Pac. Ry. v. Mauldin, 46 S. W., 650; Pearl v. West End St. Ry., 57 N. E., 339; Pittsburg, C. C. & St. L. Ry. v. Sullivan, 40 N. E., 138; Eighmy v. Union Pac. Ry., 61 N. W., 1056; Maine v. Chicago, B. & Q. R. R., 70 N. W., 630; York v. Chicago, M. & St. P. R. R., 67 N. W., 574; Atchison, T. & S. F. Ry. v. Zeiler, 38 Pac., 282; South Florida Ry. v. Price, 13 So., 638; Quinn v. Kansas City, M. & B. Ry., 30 S. W., 1036; Allan v. State S. S. Co., 30 N. E., 482; O'Brien v. Cunard S. S. Co., 28 N. E., 266; 26 Cyc., 1082.

The Acts of Congress impose on ocean carriers the duty to keep a competent physician on each ship to wait on passengers. The construction given to that statutory duty is that it extends no further than the exercise of reasonable care to get a competent physician, which, being done, the company is not responsible for damages caused by his unskillful treatment of the patient. In no event, or in no view of the case, can the testimony be construed into creating so great a liability on the part of the appellant, and its liability under no circumstances of the testimony and the record could go beyond reasonable care in the selection of Binney and Gerino. O'Brien v. Cunard S. S. Co., 28 N. E., 266; Allan v. State Steamship Co., 30 N. E., 482; Laubheim v. Netherland Steamship, 13 N. E., 781.

If the court should be of the opinion from the testimony that there was a liability resting on the defendant to exercise ordinary care in the employment and retention of Dr. Binney and Dr. Gerino, if either erred in judgment in appellee's treatment or was careless or negligent in attention, the defendant was not liable for the consequences thereof, inasmuch as the appellant had no right to direct or control the doctors in the exercise of their judgment or skill in the management of the case. In other words, that the law of respondeat superior does not apply. Pearl v. West End St. Ry., 57 N. E., 339; Quinn v. Kansas City, M. & B. Ry. (Tenn.), 30 S. W., 1036; Meyers v. Holborn, 33 Atl., 389.

*Q. T. Moreland,* for appellee.—The plaintiff having sued for breach of an express contract to furnish proper medical and surgical

skill and attention, as well as on an implied undertaking to so furnish such skill, etc., and its voluntary assumption to treat plaintiff in consideration of the monthly deductions from his wages, the question of profits, real, imaginary or contemplated, is rendered entirely immaterial. Texas & P. Coal Co. v. 'Connaughton, 50 S. W., 173; Glavin v. Rhode I. Hospital, 34 Am. Rep., 675; Richardson v. Carbon Hill Coal Co., 32 Pac., 1012; Zumwalt v. Texas Central Ry., this court, not published as yet; Phillips v. St. Louis & S. F. Ry. Co., 17 L. R. A. (N. S.), 1167, 111 S. W., 109; Gitzhoffen v. Sisters of the Holy Cross Hospital Assn., 8 L. R. A. (N. S.), 1161.

SPEER, ASSOCIATED JUSTICE.—Appellee D. G. McWain, an employe of the Texas & Pacific Coal Company, sued that company for damages for alleged maltreatment of a broken arm, averring that the defendant had contracted to treat him, as one of the employes, for injuries received while in its service, and that by reason of its negligence in this respect he had sustained injuries in the amount sued for. The defendant answered generally and specially that it was incorporated under the general laws of Texas for the sole purpose of mining and transporting coal, and was without legal power to make the contract sued on; that plaintiff was a member of a labor union, and that the matter of employment of the physicians was wholly in the hands of such union; that it merely distributed the fund accumulated by the contributions of its various employes, and that its services in this respect were without compensation and rendered at the request of its employes who selected the physicians that treated them. There were some further special answers that need not be noticed. The trial resulted in a verdict and judgment in the plaintiff's favor for five thousand dollars, from which the defendant prosecutes this appeal.

The greater part of appellant's brief is devoted to the assignment that the court erred in not instructing the jury summarily to find for the defendant, the following contentions being made under this assignment, to wit: First, that the selection of the physicians upon whose treatment negligence is predicated in the case, was shown to be in the hands of the labor union of which appellee was a member; second, that the record shows indisputably that appellant did not undertake to treat appellee for compensation, but that it tendered its good offices to its injured employes as a gratuity; and, third, that there is a fatal variance between the contract pleaded and that proved. While there are a great number of propositions submitted under this assignment, it is believed the foregoing will cover all the pertinent issues raised by them.

Upon the issue raised by appellant's insistence that the labor union had selected the doctors who treated appellee, the trial court charged the jury as follows: "If you believe from the evidence that Dr. Gerino was employed by defendant as one of the surgeons at the mine at the instance and request of a committee, and that some of the members of said committee were the duly authorized agents of the local union of which plaintiff was a member, then, even though you should believe from the evidence that Dr. Gerino failed to treat

the plaintiff with that degree of skill and care which a surgeon of ordinary prudence of that vicinity would have treated him and that plaintiff sustained damages by reason thereof, you can not allow plaintiff any damages therefor." The evidence indicates that Dr. Gerino was first called to visit appellee when his arm was broken, but that his services only extended over a few days at most, when Dr. Binney, another surgeon, was called in, and whose services extended over some eight or nine months. The appellee's case is predicated upon the negligence of both of these physicians, but a charge as to Dr. Binney similar to the foregoing as to Dr. Gerino, was neither given nor requested. In truth, we have found nothing in the record to indicate, much less conclusively to show, that the union had anything whatever to do with the selection of Dr. Binney as a surgeon. Conceding, therefore, that appellant's contention is legally sound, it must nevertheless fail because of our finding of the facts above.

Appellant's next contention is that the undisputed evidence shows that it made no contract to treat appellee, and that therefore it should have had the instruction. Upon this point the testimony shows that appellee was in the employ of appellant company as a coal miner. At the time of his employment nothing was said about deductions from his wages for doctor's fees, but he knew that it would be taken out and made no objections to it. That the sum of fifty cents was taken from every employe's wages per month, for which appellee testified he "was to get doctor, medical and surgical attention—the very best medical and surgical attention." The vice-president and general manager of appellant, who is shown to be its *alter ego* in Texas, testified: "The only way the miners can keep from paying the fifty cents per month is not to enter the employment of the company; when an employe leaves the employment of the company he has no further interest in this fund; none of it is returned to the employe, as such; for his fifty cents we give the miner medical attention, bandages, conveyances from the mines, a hack to ride from the mines to his home if he is hurt in the mines, and the medical attention of either one or all three of the physicians who are in the employ, or the surgeons as they may be; we give that to the individual himself; if he calls for a physician outside of the three he pays for that himself; Dr. Binney has been in the employ of the company for about eighteen years; Dr. Gerino is not in the employ of the company now, but offhand I should say he was in the employ of the company two years, 1905 and 1907, I believe. We have to furnish them (the employes) three good physicians, that is the understanding now between the employes or their committees and myself, with hack and blankets and bandages, etc., covered by the contract in pamphlet form that has been produced." When appellee was injured one of appellant's employes, the weigh boss, phoned for a doctor, when Dr. Gerino responded and after three or four days' treatment Dr. Binney took charge of the case and had the patient in charge for the time already shown. These quotations from the evidence are sufficient, we think, to answer appellant's contention that it was entitled to an instruction on that score.

Finally, it is urged that because of the variance already referred to, the instruction should have been given. Some of appellee's allegations in this respect are as follows: "Plaintiff further avers and charges that at the time of the employment of plaintiff by the defendant it was then and there understood and agreed by and between plaintiff and the defendant and its servant and agent, one Nichols, the pit boss, that as a part of the contract of employment plaintiff was to pay defendant the sum of fifty cents monthly during every month he was in the employ of the defendant, and that the same was to be deducted monthly from the wages of the plaintiff by the defendant; that this is the agreement the defendant makes with all of its employes, and that the fifty cents is deducted monthly from the wages of the employe and all of the employes of the defendant, and it is so agreed to and understood by all of these in the employe of the defendant, and plaintiff alleges that the same was deducted monthly from his wages while he was in the employ of the defendant, and that he consented and agreed to the same. In consideration of the monthly deduction and payment by the plaintiff, the defendant then and there undertook and agreed to furnish plaintiff hospital conveniences and attendance, and competent medical and surgical treatment in case of sickness or injury while in the employ of the defendant, and to treat plaintiff by its own servants and agents and surgeons and physicians selected and employed and paid by defendant, in a proper and skillful manner in the event plaintiff should become sick or injured by accident or otherwise while in the employ of the defendant. That the names of the physicians and surgeons who should or would treat plaintiff in case of sickness or injury were not mentioned or specified in the making of the contract with plaintiff. But such contract is made with all miners in the employ of the defendant, and the fifty cents per month is deducted by the defendant from all wages of those in its employ for the 'doctor,' and the money is the money of the defendant company and is of profit to defendant." There is no variance between the contract thus pleaded and the one proved in the quotations hereinbefore made.

A number of special charges were refused, and properly so, for the following reasons: Special charge No. 2 required a finding for appellant if the employes through their unions by their contract with appellant had the right to regulate the amount of the collections for the hospital and physicians' fund, and it was not intended that any profit should accrue to it from this source, and that the collections and expenditures ran about equal each month. This, if given, would have excluded appellee from a recovery on his express contract for treatment, however much the proof may have justified a verdict on such issue. Besides, the court's charge was favorable enough to appellant in this respect. The same may be said of special charge No. 3, wherein the jury were instructed to find for appellant if it did not undertake to furnish and provide appellee with medical attention for profit. Special charges Nos. 5 and 7 directed a verdict for the appellant in the event of certain findings with reference to Dr. Binney, which would have excluded appellee's right to recover

for Dr. Gerino's negligence; and special charges Nos. 6 and 8 contained the same error with reference to Dr. Gerino; so that none of these charges could have been given under the evidence.

In the tenth assignment appellant attacks the second paragraph of the court's charge, already quoted in this opinion, and insists that it was error for the court thus to single out the particular local union of which the appellee was a member, and to require it to provide that some of the members of the committee that demanded the employment of Dr. Gerino were from this local, before he would be bound by the action of the union committee. It is sufficient answer to this assignment to say that the charge is one in appellant's favor, directing a verdict for it in the event of a particular finding, and to this extent at least is correct, according to appellant's own contention. If appellant was entitled to a more favorable charge, it should have requested it. Chicago, R. I. & G. Ry. Co. v. Johnson, 111 S. W., 758, and authorities there cited.

From the entire record we conclude that the evidence not only raises all issues submitted by the court, but is abundantly sufficient to support the jury's findings upon them. This court has recently had occasion to pass upon a very similar question to the one involved in this appeal in the case of J. L. Zumwalt v. Texas Cent. R. R. Co., 56 Texas Civ. App., 567.* In that case the trial court instructed a verdict in favor of the defendant, but this court reversed the ruling because the evidence tended to show that the railroad company, in consideration of a monthly deduction of fifty cents from the wages of the employe plaintiff, undertook to furnish him medical treatment and hospital conveniences, even though the evidence further showed that the entire fund derived from this source was expended by the defendant company in payment of its surgeon's salary. This, we think, is the true rule. If there was a contract whereby this appellant undertook, in consideration of the monthly deduction from appellee's wages, to furnish him medical treatment, then appellant is liable for the negligence of its physicians supplied by it in discharge of such undertaking, notwithstanding it may be that no profit accrues to it from the deductions thus imposed upon its employes. Indeed, its liability would be the same if no deduction whatever was made. It is inherent in the very contract of employment, and to furnish careful treatment where it has contracted to do so is as much a part of its duty as to exercise care in furnishing a safe place to work and safe tools and appliances with which to labor.

We find no error in the judgment and it is affirmed.

*Affirmed.*