## PERRY v. CHICAGO, R. I. & G. RY. CO.

(Court of Civil Appeals of Texas. Dallas. Jan. 10, 1914. Rehearing Denied Jan. 31, 1914.)

LIMITATION OF ACTIONS (§ 55*)—ACCRUAL OF ACTION.

In case of a permanent obstruction causing permanent overflows, the landowner's right of action for all damages past and future accrues at the completion of the obstruction, and hence, where a railroad company, either in 1909 or previously, constructed an embankment which caused overflows on defendant's land, the statute of limitations then began to run, notwithstanding the railroad company's promise to build culverts and sluices, and the landowner's right of action for damages for the overflow is barred in two years; this being so, even though overflows were liable to occur only at long intervals and did not occur before action was begun.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 299–306; Dec. Dig. § 55.*]

Appeal from District Court, Dallas County; J. C. Roberts, Judge.

Action by J. E. Perry against the Chicago, Rock Island & Gulf Railway Company. From a judgment for defendant, plaintiff appeals. Affirmed.

Carden, Starling, Carden, Hemphill & Wallace, of Dallas, for appellant. Lassiter & Harrison, of Ft. Worth, and Bennett Hill and C. D. Hunt, both of Dallas, for appellee.

RAINEY, C. J. J. E. Perry brought this suit against the railway company to recover damages for the depreciation in the value of certain real estate, caused by the construction of its embankment, which obstructed the flow of water and permanently damaged the value of the land.

Defendant interposed a special exception, asserting that it appeared from the petition that plaintiff's cause of action, if any, for said permanent injuries was barred by the two-years statute of limitations. This exception was sustained by the court below. The

plaintiff refusing to amend, the cause was dismissed, and plaintiff appeals.

The sole question for determination is whether or not said action is barred by the two-years statute of limitation. The petition, as far as relevant to the solution of this question, alleges: "Further complaining of the defendant, plaintiff represents that he is the owner of a certain tract and parcel of land situated in Carrollton, Tex., upon which he (the plaintiff) has resided for a number of years last past, and upon which he now resides, and which is now and has for a number of years last past constituted his residence homestead, which said tract of land is well known to the defendant herein; that a number of years ago the defendant constructed its railroad and the necessary embankment thereof through Carrollton, near and adjacent to said property, and, instead of constructing and maintaining the necessary culverts and sluices as the natural lay of the land required for necessary drainage thereof, it so constructed and maintained, and has continued to maintain since such construction, the said culverts and sluices, so that its roadbed backed and held water upon plaintiff's said land and overflowed the same; that prior to 1909 such overflows had been caused and produced upon said land in said manner, and the plaintiff, prior to 1909, gave the defendant notice thereof and settled and compromised with it for certain temporary damages resulting therefrom; that the defendant then and there assured the plaintiff that such damages were temporary and would not thereafter arise; and that the defendant would construct and maintain necessary culverts and sluices for the necessary drainage thereof, as the natural lay of the land required; that the plaintiff relied upon such promises and assurances and believed that the same would be fulfilled; that for some time prior to 1912, to wit, during 1909, 1910, and 1911, and during the period that the plaintiff was so relying upon said promises, there was a severe drouth, by reason of which there was little or no, and less than the ordinary, rainfall upon the land belonging to plaintiff, and in the vicinity thereof, and by reason of which drouth, no water was backed and held on plaintiff's land during said period by said roadbed; that during two or three periods of the spring of 1912, the exact dates of which are now unknown to plaintiff, there was ordinary rainfall, and, by reason of the construction of said roadbed, and the lack of construction of the necessary sluices and culverts aforesaid, water was caused to back up and stand and overflow plaintiff's said premises for several days, being so held by said embankment, which had been so constructed and maintained without the necessary culverts and sluices, and plaintiff's said premises were permanently damaged thereby, as hereinafter set out; that, during said period of 1909, 1910, 1911

and 1912, and after said rainfall, the defendant worked upon said roadbed and continued to cause and did cause plaintiff to believe that its said assurances and promises to remedy and correct said defective condition would be complied with, and did cause certain sluices and drains to be constructed, but said sluices and drains were not so constructed so as to drain said body of water and plaintiff's said land, as the natural lay of the land required; that, on account of defendant's said assurances and promises to remedy and correct said condition, and on account of the lack of rainfall and drouthy condition between 1909 and 1912, and on account of the defendant working upon said right of way, as aforesaid, plaintiff could not, and did not, know and discover that said defective condition had not been corrected until the year 1912, when, by reason of said embankment and said defective drainage, together with the rainfall, as hereinbefore set out, said premises were flooded, as hereinbefore alleged, and plaintiff's said premises permanently damaged thereby; that, had plaintiff known thereof, he could not have instituted suit thereon prior to January 1, 1909, by reason of the promise of settlement which he made with the said defendant company for the said temporary damages to said land; and had he known thereof, he could not have instituted suit thereon during the years of 1909, 1910, and 1911, on account of there being no rainfall, which, together with said defective drainage, caused no damages to plaintiff's property. Plaintiff further shows that by reason of said original construction of said roadbed, without the necessary culverts and sluices for the necessary drainage thereof, as the natural lay of the land requires, and by reason of the continued maintenance of said roadbed without the necessary culverts and sluices for the necessary drainage thereof, as the natural lay of the land required, and the maintenance of said roadbed during the spring of 1912, as aforesaid, without the necessary culverts and sluices for the necessary drainage thereof, as the natural lay of the land required, and by reason of the failure of the plaintiff to correct said defective condition during the periods of time that it has worked upon said roadbed, that during and after ordinary and usual rain overflows will continue to be so caused and produced by said roadbed, as so constructed, and the said defective construction and conditions, and the damages to said premises are permanent, and a permanent nuisance has been created upon plaintiff's land and upon its right of way adjoining and near said land by reason thereof, and all as the direct and proximate result of the unlawful and negligent acts of defendant as aforesaid; and that, by reason thereof, plaintiff's said property has been damaged in the sum of $1,700. Plaintiff further shows that the market value of said property before

the said damage was thus made and appeared to be permanent was $1,200 more than the market value of said property thereafter."

We are of the opinion that the trial court did not err in sustaining the demurrer to the plaintiff's petition on the ground that plaintiff's cause of action was barred by the two-years statute of limitation.

The petition alleged that the overflows were caused by the construction of appellee's embankment, which created a permanent nuisance, and which caused permanent damage to his land by creating a depreciation in its value. There is an allegation to the effect that the damage done to the land was settled for in 1909, showing that the embankment was constructed in that year or prior thereto, and there is no allegation that the overflow of 1912 created any new injury, from which additional damage resulted.

The rule as to when the statute of limitation begins to run in case of permanent injuries is thus stated in Cyc. 1455 (B): "In cases of permanent obstructions causing permanent overflows it is generally held that since all the damages for them, past and future, ordinarily can be presently estimated, they can and must be recovered in a 'single action and, therefore, according to the rule previously stated, that the statute runs from the time when the obstruction is completed or made permanent, in case its erection constitutes an actual wrong to plaintiff, or from the time when the injury is first sustained from the overflow in case the erection of the structure is not wrongful or invasion of plaintiff's rights, or the completion of the obstruction may immediately result in the overflow, thus fixing the beginning of the statutory period, irrespective of whether the creation of the obstruction is actionable per se or not.'" This seems to be the rule in this state governing a recovery for permanent injuries to land. Railway Co. v. Brown, 38 Tex. Civ. App. 610, 86 S. W. 659. In the case last cited, the opinion in Rosenthal v. Railway Co., 79 Tex. 325, 15 S. W. 268, is quoted with approval, as follows: "The controlling rule in actions for injuries resulting from similar nuisances would seem to be to adopt in each case that measure of damages which is calculated to ascertain in the most certain and satisfactory manner the compensation to which the plaintiff is entitled. When the injury is liable to occur only at long intervals, or when the nuisance is likely to be removed by any agency, the damages which have occurred only up to the time of the action will be allowed; but, if the nuisance is permanent, and the injury constantly and regularly recurs, then the whole damage may be recovered at once. In a case like this, the resulting depreciation in the value of the property is the safest measure of compensation. Here it may be inferred from the evidence that the injury recurs upon each considerable rainfall, and continues during a stage of offensive stagnation until the water evaporates. The defendants seem to have treated the work as permanent, since they have failed, upon application, to make a culvert for the passage of the water; and we are of opinion the depreciation in the value of plaintiff's property is the most certain measure of his damages for the injury."

The foregoing excerpt is peculiarly applicable to the facts alleged in the plaintiff's petition. The embankment being alleged to be permanent and no new or additional injury to said land other than depreciation of value, which we think was evident from the overflow prior to 1909, plaintiff's cause of action for such depreciation in value of the land at least accrued when plaintiff's land was first overflowed. That the full extent of the damages was not then known is immaterial, as it would not affect the running of limitation.

The judgment is affirmed.