DAVIS v. GULF, C. & S. F. RY. CO. et al. (No. 8575.) *

(Court of Civil Appeals of Texas. Ft. Worth. April 9, 1917. Rehearing Denied May 12, 1917.)

1. MASTER AND SERVANT ⬥92(1)—MASTER'S LIABILITY—MEDICAL TREATMENT.

Defendant railway, who employed plaintiff, deducted from his wages, and the wages of all other employés, a certain per cent. as hospital fees, which it turned over to the hospital association, a separate and distinct corporation, from which the railway received no profits. The deductions thus made entitled the employés to medical treatment in the hospital. On the back of each check to plaintiff for wages was an indorsement, below which he always signed, to the effect that deduction for hospital fees was made with express understanding that the sole obligation of the railway was to pay over the money to the association. While in the employ of the railway, plaintiff's thumb was injured, and he applied to one of the surgeons employed by the association for treatment, which was refused. Held, that railway was not liable for any damage resulting to plaintiff.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 143.]

2. MASTER AND SERVANT ⬥92(1)—LIABILITY FOR ACTS OF SERVANTS—REFUSAL TO GIVE MEDICAL TREATMENT.

The original contributors to the hospital fund agreed with each other that such funds should be set aside as a trust fund to be used for the sole purpose of treating and caring for such of them as had need of care. One of the by-laws of said association provided that the funds should be used solely in carrying out the objects as stated in the charter. Held that, as the object of the suit against the hospital association was to subject the funds thus received and held in trust to satisfy plaintiff's claim for damages for failure to give treatment, there could be no recovery, as to use the funds for such purpose would be in violation of the agreement of the contributors to a charity.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 143.]

3. COURTS ⬥91(1)—LAW OF CASE—PREVIOUS DECISION OF HIGHER COURT.

Decisions of the Supreme Court are binding on this court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 313, 325.]

Appeal from District Court, Johnson County; O. L. Lockett, Judge.

Suit by Houston Davis against the Gulf, Colorado & Santa Fé Railway Company and another. From a judgment for defendants, plaintiff appeals. Affirmed.

J. B. Haynes and S. C. Padelford, both of Cleburne, for appellant. Lee, Lomax & Smith, of Ft. Worth, and Brown & Lockett, of Cleburne, for appellees.

DUNKLIN, J. Houston Davis instituted this suit against the Gulf, Colorado & Santa Fé Railway Company and the Gulf, Colorado & Santa Fé Hospital Association to recover damages for the failure of defendants to furnish medical and surgical treatment of plaintiff's thumb, which was injured while he was employed in the machine and repair shops of the railway company in the town of Cleburne. From a judgment rendered in favor of both defendants upon an instructed verdict, the plaintiff has appealed.

The evidence shows that the railway company who employed the plaintiff deducted from his wages, and the wages of all other employés, a certain per cent. as hospital fees, which it turned over to the hospital association, a corporation organized and operating under a separate and distinct charter from that of the railway company. The deductions so made entitled the employés to medical treatment in the hospital, which was established and maintained by the hospital association in the town of Cleburne with funds derived from such deductions from the wages of railway employés. The evidence further shows that, when plaintiff received the injury to his thumb, he went to the hospital to have the same treated, and applied to Dr. Dennis, one of the surgeons there employed, and, according to allegations in his petition supported by his testimony, Dr. Dennis negligently refused to give him the needed treatment. He alleged in his petition that both defendants were under contract to render him such treatment in consideration of the deductions made from his wages. He further alleged that for lack of treatment the wound in his thumb had become infected with blood poison, which resulted in a disease of his heart, and for such results he sought to recover damages. But there was no allegation that either of the defendants was guilty of negligence in the employment of Dr. Dennis, or any other surgeon or physician employed at the hospital.

The proof showed that Dr. Dennis and Dr. Strickland were local surgeons at Cleburne for the hospital association. The proof also showed without controversy that both of

those men were capable surgeons and physicians and men of high standing in their profession. The hospital had been in operation for several years, and all funds derived from the wages of the railway company's employés for medical treatment had been turned over to the officers of the hospital association, and that association had entire management and control of the same, and, according to the undisputed evidence, was the legal owner thereof and the railway company received no financial benefits or profits therefrom. A statement for the fiscal year ending June 30, 1912, showed the sum of $10,930.56, cash on hand; it also showed the hospital buildings belonging to the association of value $103,916.20; equipment for hospital building, valued at $4,325.71; real estate, valued at $326.25; and accounts receivable in the sum of $4,833.01—making a grand total of assets of $118,060.78 over and above the liabilities of the association. The proof also showed that the receipts of the association from the deductions made from the railway company's employés usually ran in excess of the expenses of the association. All the funds disbursed by the hospital association were disbursed by its chief surgeons. The charter of the hospital association expressly provided that it should have no capital stock and, that its business should be managed and conducted by its employés. The charter also stated that:

It was formed "for the support of a benevolent and charitable undertaking, in this: To provide medical and surgical treatment and care for the employés of the Gulf, Colorado & Santa Fé Railway Company, who may be injured or disabled by accident or sickness while in the employ of said company, and in the line of duty, to such extent only, and under such rules and regulations as may be prescribed from time to time by the trustees and to furnish such other and additional privileges and benefits to said employés as may from time to time be directed by the board of trustees of this association; provided that such additional benefits and advantages shall not be inconsistent with nor interfere with the main object of said association, as hereinbefore expressed, and to that end purchase, erect and maintain suitable buildings for hospitals or other purposes at suitable points along the line of said railroad and its branches."

One of the by-laws of said association reads as follows:

"The funds of the association shall be used solely in the carrying out of the purposes and objects of the association as stated in its charter."

The record does not show who has authority to elect a board of trustees of the hospital association. The only testimony concerning how many constitute the board and of whom the board is composed is that of Dr. White, one of the chief surgeons of the hospital association, which is as follows:

"The board of directors is made up of five members, two employés, two company men, and a chief surgeon."

But for the sake of argument we shall assume that the entire board of directors is elected by the defendant railway company.

On the back of each check issued to the plaintiff in payment of his wages was the following printed indorsement, below which he always signed his name at the time he collected the checks:

"Deduction of hospital fee is made with the express understanding that the sole obligation imposed thereby upon said railroad company is to pay over such deduction to the G., C. & S. F. Hospital Association."

The indorsement was admitted in evidence, over the objection of the plaintiff upon the grounds that there was no consideration therefor; that same did not form a valid contract between the plaintiff and the railway company; and that the railway company could not by such a contract relieve itself from liability for its own negligence in failing to furnish treatment to plaintiff in accordance with its contract so to do.

Error has been assigned, also, to the action of the court in instructing a verdict in favor of the two defendants.

Appellant contends that the facts show that the railway company was under a contract to treat him for his injuries, and that the hospital association was under a like contract, and was not a charitable institution, but was such a corporation and engaged in such business as to render it liable for the negligence of the surgeons in charge of the hospital to which plaintiff applied for treatment.

[1] We are of the opinion that this case is controlled by the decision of our Supreme Court in Texas Central R. Co. v. J. L. Zumwalt, 103 Tex. 603, 132 S. W. 113, 30 L. R. A. (N. S.) 1206. In that case the evidence showed that like deductions were made from the wages of the employés of the railroad company and were turned over to S. Webb, under a contract on the part of Webb to establish and maintain a suitable hospital at his own expense for the treatment of all employés of the railroad company, and to furnish all instruments, devices, surgeons, etc., necessary to administer such treatment. The proof further showed that the railroad company realized no financial benefit or profit from the funds so turned over to Webb, and in that case our Supreme Court used the following language:

"The effect of the evidence is that the railroad company inaugurated the plan to accumulate a fund with which to care for such of its employés as might be injured or be sick during such employment, and that fact suggests that it may have had a purpose of its own; but there is nothing in the evidence to indicate what that purpose was, and liability cannot be based upon vague speculation.

"The fund did not become the property of the company, but it was held by it in trust for the contributing employés. There being no method of executing the trust specified, the company was charged with the duty of administering it in such manner as would best accomplish the end for which it was accumulated; that is, to provide for the care of the sick and injured employés who should come within the terms of the trust. From the standpoint of the contributing employés, the fund constituted a char-

ity, because it was raised by them to be expended for the benefit of persons entitled thereto, who would receive it without cost to them. It may then with propriety be said that the railroad company was charged with dispensing a charity fund, and if it made the contract with Dr. Webb as a means of executing the trust reposed in it, that is, to give relief to the sick and injured employés coming within the class entitled to receive it without cost to them, it was engaged in dispensing a charity, and, under such circumstances, Dr. Webb would not be the agent of the company, nor would he be performing or transacting a business of the company; therefore it would not be liable for his negligence in the discharge of his duty as surgeon."

And the court further held that, as it did not appear that the accumulation of funds from the wages of its employés was for the purpose of benefiting itself, the railway company was not liable for the negligence of one of the surgeons in the hospital established by Webb in the treatment of plaintiff's injured eye.

Under the undisputed facts above stated, we are of the opinion that, aside from the force of the contract shown by the indorsement upon the backs of the pay checks received by the plaintiff, the court did not err in instructing a verdict in favor of the railway company, as the other undisputed facts recited above bring the case clearly under the rule announced in the Zumwalt Case and show no liability on the part of the railway company for the injuries complained of by the plaintiff. See, also, Pearson v. Arkansas Midland Ry., 106 Ark. 442, 153 S. W. 595; McDonald v. Mass. Gen. Hospital, 120 Mass. 432, 21 Am. Rep. 529; Feoffees Heriots Hospital v. Ross (by House of Lords) 12 Clerk & Finley Repts. 506.

[2] The purpose of this suit against the hospital association is to subject the fund and property accumulated for hospital purposes to satisfy plaintiff's claim for damages for injuries resulting from the negligence of Dr. Dennis, for in no other manner could such a judgment be paid.

In Union Pac. Ry. Co. v. Artist, 60 Fed. 365, loc. cit. 370, 9 C. C. A. 14 (23 L. R. A. 581), the following was said:

"The true test of a public charity is not the motive of the donor, but the purpose to which the money given is to be applied. If argument, authority, and illustration in support of this proposition are wanted, they will be found in the learned and exhaustive opinion of Mr. Justice Paxson in Insurance Patrol v. Boyd, 120 Pa. 642, 646, 15 Atl. 553 [1 L. R. A. 417, 6 Am. St. Rep. 745]."

The case last mentioned in the quotation was cited with approval by our Supreme Court in the Zumwalt Case, and contains the following:

"In Feoffees v. Ross, 12 Clark & F. 506, a person eligible for admission to the hospital brought an action for damages against the trustees for the wrongful refusal on their part to admit him. The case was appealed to the House of Lords, when it was unanimously held that it could not be maintained.

"Lord Cottenham said: 'It is obvious that it would be a direct violation, in all cases, of the purpose of a trust, if this could be done; for

there is not any person who ever created a trust that provided for payment out of it of damages to be recovered from those who had the management of the fund. No such provision has been made here. There is a trust, and there are persons intended to manage it for the benefit of those who are to be the objects of the charity. To give damages out of a trust fund would not be to apply it to those objects which the author of the fund had in view, but would be to divert it to a completely different purpose.'

"Lord Brougham said: 'The charge is that the governors of the hospital have illegally and improperly done the act in question, and therefore, because the trustees have violated the statute—therefore, what? Not that they shall themselves pay the damages, but that the trust fund which they administer shall be made answerable for their misconduct. The finding on this point is wrong, and the decree of the court below must be reversed.'

"Lord Campbell: 'It seems to have been thought that, if charity trustees have been guilty of a breach of trust, the persons damnified thereby have a right to be indemnified out of the trust funds. That is contrary to all reason, justice, and common sense. Such a perversion of the intention of the donor would lead to most inconvenient consequences. The trustees would in that case be indemnified against the consequences of their own misconduct, and the real object of the charity would be defeated. Damages are to be paid from the pocket of the wrongdoer, not from a trust fund. A doctrine so strange, as the court below has laid down in the present case, ought to have been supported by the highest authority. There is not any authority, not a single shred, here to support it. No foreign or constitutional writer can be referred to for such a purpose.'

"I have quoted at some length from the opinions of these great jurists, because they express in vigorous and clear language the law upon this subject. I have not space to discuss the long line of cases in England and this country in which the above principle is sustained.

"It is sufficient to refer to a few of them by name: Riddle v. Proprietors, 7 Mass. 169 [5 Am. Dec. 35]; McDonald v. Hospital, 120 Mass. 432 [21 Am. Rep. 529]; Sherbourne v. Yuba Co., 21 Cal. 113 [81 Am. Dec. 151]; Brown v. Vinalhaven, 65 Me. 402 [20 Am. Rep. 709]; Mitchel v. City of Rockland, 52 Me. 118; City of Richmond v. Long, 17 Grat. [Va.] 375 [94 Am. Dec. 461]; Ogg v. City of Lansing, 35 Iowa, 495 [14 Am. Rep. 499]; Murtaugh v. City of St. Louis, 44 Mo. 479; Patterson v. Reform School, 92 Pa. 229; Maxmilian v. Mayor, 62 N. Y. 160 [20 Am. Rep. 468]."

The original contributors to the hospital fund agreed with each other that such fund should be set aside as a trust fund and should be used for the sole purpose of treating and caring for such of them as might have need of such care; and the organization of the hospital association as an agency for accomplishing the purposes of the agreement did not destroy such contractual relations of the employés with each other. To use the fund for any other purpose would be a violation of that agreement, as much so as it would be a violation of a partnership agreement, to engage in a commercial venture, to use partnership funds to compensate one of the partners for personal injuries resulting from the negligence of an employé of the firm. By becoming a party to the agreement of those who originated that plan of caring for one another, plaintiff acquired the added advantage of the right to share in

the benefits arising from a large fund and splendid accommodations that had already been raised by contributions from others, many of whom no doubt had severed their relation with the railway company, and therefore were no longer entitled to any benefits of such fund.

In view of the contract between the railway employés under which the hospital fund was contributed that the same should be used for no other purpose than to care for the sick and injured, the present suit differs, favorably to the hospital association, from the English case of Feoffees Heriots Hospital v. Ross, referred to above, since the plaintiff in that case was an entire stranger to the creation of the trust estate. Furthermore, while each employé of the railway company has a direct pecuniary interest in the hospital fund to the extent of the right to be cared for during illness, yet it is further true that the benefits thus realized are not conferred upon the theory that the recipients have paid value therefor, but as a charity only. If only one contribution of, say, 50 cents, has been made, or the employé has not worked long enough to make any contribution at all, nevertheless he is entitled to treatment, and that, too, regardless of the expense necessary thereto. And the record suggests that a large amount of the funds and property owned by the association at the time of plaintiff's injury had been contributed by employés who had ceased to work for the railway company, and therefore were no longer entitled to treatment.

The hospital association acted only as a trustee to administer the trust funds. It owned no title to any property except the legal title which it held only as trustee for the benefit of others. It had no stockholders to realize profits from its business, and no one could be benefited thereby except those who were admitted for treatment. Considered as a separate and distinct corporation, the reasoning advanced in the Zumwalt Case to exonerate the railway company from liability applies with equal force in favor of the hospital association. For those reasons and other reasons suggested above, we conclude that there was no error in the trial court's peremptory instruction to the jury to return a verdict in favor of that defendant as well as in favor of the defendant railway company.

We think the cases cited by appellant (Texas & Pacific Coal Co. v. Connaughten, 20 Tex. Civ. App. 642, 50 S. W. 173; Texas & Pacific Coal Co. v. McWain, 57 Tex. Civ. App. 512, 124 S. W. 202), in each of which the employer of those contributing the hospital fees was held liable for the negligence of hospital employés, are distinguishable from the present suit and from the Zumwalt Case, in the fact that in those cases there was evidence to show either that the hospital department was in fact conducted by defendant's serv-

ants in consideration of fees deducted from the wages of employés, or else that it realized a financial profit therefrom, and made deductions from the wages of its employés for medical and surgical treatment with a view to realizing such profits.

Appellant has cited other cases also, such as Phillips v. St. L. & S. F. Ry. Co., 211 Mo. 419, 111 S. W. 109, 17 L. R. A. (N. S.) 1167, 124 Am. St. Rep. 786, 14 Ann. Cas. 742, by the Supreme Court of Missouri, to sustain his contention of liability of defendant railway company, and such cases as Armendarez v. Hotel Dieu, 145 S. W. 1030, and St. Paul's Sanitarium v. Williamson, 164 S. W. 36, to support his allegations of liability of the hospital association.

[3] As before stated, we think the present suit is controlled by the decision of our Supreme Court in the Zumwalt Case, which is binding upon this court, and which we think entirely sound. Therefore we shall not attempt a discussion of those authorities to determine whether or not they may be distinguished in the principles announced from the present suit, or the Zumwalt Case, and, if not so distinguishable, to advance reasons for questioning their soundness, other than such reasons as are noted already.

Accordingly, all of appellant's assignments of error are overruled, and the judgment of the trial court is affirmed.