### TOWN OF JACKSONVILLE v. McCRACKEN et al. (No. 1751.)

(Court of Civil Appeals of Texas. Texarkana. June 7, 1917. Rehearing Denied July 28, 1917.)

1. MUNICIPAL CORPORATIONS ⊂⇒742(5)—PRIVATE NUISANCE—EVIDENCE—SUFFICIENCY.

In an action against a town for damages due to the maintenance of a septic tank, evidence *held* sufficient to make an issue whether the alleged nuisance existed and was regularly occurring and permanent.

2. LIMITATION OF ACTIONS ⊂⇒55(6)—ACCRUAL—PERMANENT NUISANCE.

Where the sewer was a permanent structure and became a continuing nuisance from the beginning of its operation, the depreciated market value to plaintiff's land was susceptible of ascertainment when the use of the sewer began, and the statute of limitations began to run from that time.

3. MUNICIPAL CORPORATIONS ⊂⇒742(6)—NUISANCE—PROXIMATE CAUSE OF DEATH—EVIDENCE—SUFFICIENCY.

In an action for damages for unsanitary condition created by operation of a septic tank by defendant town, evidence that death of plaintiff's son was caused by alleged nuisance *held* sufficient for submission of question to jury.

Appeal from District Court, Cherokee County; L. D. Guinn, Judge.

Action by J. L. McCracken and another against the Town of Jacksonville. Judgment for plaintiffs, and defendant appeals. Modified and affirmed.

The plaintiffs own about 29 acres of land crossed by a branch draining about one-half of the incorporated town of Jacksonville. Their residence is located just outside the corporate limits of the town, and is 70 or 100 feet distant from the branch. In the fall of 1913 the town of Jacksonville constructed a sewer system which flowed through a septic or settling tank. The septic tank and appurtenances were about 300 yards from plaintiffs' residence, and the outflow from the septic tank emptied into said branch. In July, 1914, and afterwards, the odors and smells and outflow from the septic tank became obnoxious and offensive. The plain-

tiffs sue for damages proximately resulting from alleged nuisance created and permanently continuing through the operation and maintenance of the disposal tank. The petition also prayed for abatement of the nuisance by injunction. The defendant excepted to the petition, pleaded a general denial, the statute of two years' limitation, and specially that the injury or nuisance was not permanent, but an abatable one. In accordance with the findings of the jury and upon the evidence, the court entered judgment for the plaintiffs for $5,000 damages, but denied plaintiffs an injunction as prayed for.

The jury made answer as follows: That the septic tank was first constructed and completed by the town of Jacksonville on or about September 13, 1913, and that said town first started emptying the sewerage into the septic tank on or about September 15, 1913; that the operation and maintenance of the septic tank, as well as the outflow into the branch, were disagreeable to the plaintiffs and produced an unpleasant odor; that the reasonable fair cash market value of the plaintiffs' land and premises immediately before the erection and maintenance of the septic tank was $3,300, and after the erection and operation of said septic tank was $1,500; that the erection of the septic tank neither decreased nor increased the value of plaintiffs' property, but that its operation and maintenance and the outflow therefrom decreased the value of said property $1,800; that said septic tank and the effluent therefrom became offensive and interfered with the comfortable enjoyment of plaintiffs' home; that this condition began about July, 1914, and that the sewerage disposal plant of the town of Jacksonville, since the changes made, gives off offensive odors and allows foul and fecal matter to go from same into the branch which goes upon plaintiffs' property and pollutes same to such an extent as to interfere with the comfortable enjoyment by plaintiffs of their home. The jury further found that the operation and maintenance of the septic tank caused the sickness and death of Grady McCracken, and caused sickness of the plaintiff Mrs. S. E. McCracken and of her son Sam McCracken and of her daughter Fannie May McCracken; that since the erection and maintenance of the septic tank plaintiffs have paid for doctors' bills and medicines the sum of $100, and because of sickness and of the death of their family have lost time to the value of $100; and that $3,000 would compensate the plaintiffs for the death of their son Grady McCracken. There are involved in the judgment of the court the findings of fact that the conditions existing constituted a nuisance and that the same were permanent.

Lee G. Carter and John C. Box, both of Jacksonville, for appellant. Norman, Shook & Gibson, of Rusk, for appellees.

LEVY, J. (after stating the facts as above). The appellee offered evidence, over the objection of appellant, going to show depreciation in the market value of his premises by reason of the conditions existing from the operation of the septic tank and the outflow into the branch onto his premises; and the court authorized the jury to make findings respecting the permanent depreciation in the market value of the land. The appellant by appropriate assignments of error asserts that it was conclusively shown that the conditions existing from the operation of the septic tank and the outflow therefrom could be corrected and abated, and that it was the purpose of appellant to correct the same, and that therefore appellee may not legally recover damages for permanent depreciation in the value of his land. The appellee pleaded that the alleged nuisance was a permanent one. The appellant answered that alleged causes of nuisance were of a nature capable of being abated, and that the vicious elements of the situation could and would be removed. The witnesses for appellant testified to the effect that the outflow from the septic tank never did become offensive, and that the alleged causes of the nuisance did not exist. And there was evidence by appellant that shortly after this suit costly and permanent changes were made respecting the septic tank and settling beds entirely corrective of any cause for injury or nuisance. And there is evidence that appellant intended to prevent the tank from becoming offensive by further changes if necessary so to be done. There was no evidence that appellant intended to abandon the use of the septic tank and its appurtenances. The evidence for appellee is to the effect that alleged causes of the nuisance existed and constantly and regularly occurred even after the city made the changes in the septic tank and filter bed; and there was some evidence for appellee that any further improvement as an abatement of the alleged causes of nuisance by subirrigation or piping away the outflow was impracticable. It was shown by the evidence of appellant's officials that appellant intended to continue to use the septic tank.

[1] It is believed that the evidence is sufficient to make an issue of whether or not the alleged nuisance existed and was regularly occurring and permanent. City of Paris v. Allred, 17 Tex. Civ. App. 125, 43 S. W. 62; City of Clarendon v. Betts, 174 S. W. 959. Thus there is no error, it is concluded, in the rulings of the court as complained of.

There is distinguishment between the Paris Case, supra, and the case of City of Paris v. Jenkins, 57 Tex. Civ. App. 383, 122 S. W. 411. In the latter case the evidence went to show:

"That the use made of appellant's land as a place to dump its refuse had decreased, as it had extended its sewer system, and would continue to decrease as said system was further extended; and there was also evidence to show preparation by appellant to construct an abattoir

which would enable it to altogether dispense with the use of the land as a place on which to dump dead animals."

And thus, in view of the facts, it was concluded that the alleged nuisance was a temporary one.

In the Allred Case, supra, though, it is concluded by the court that the alleged nuisance should be deemed a permanent nuisance under the facts that:

"When the sewer, the cause of the injury, was constructed, it was evidently intended by the city authorities that it should be permanent, and it has been so treated and used ever since."

It is thought the instant case is a similar one in the facts and is ruled by the latter case.

[2] Appellant contends that appellee's cause of action for permanent depreciation in the value of his premises was barred by the statute of limitation of two years. It appears that the sewerage system was constructed in the summer of 1913, and use and operation of it began on September 15, 1913; and it appears that the suit was filed December 2, 1915. It appears that the sewer was established at much cost and in a substantial and permanent manner, and was, as concluded, the cause of and constituted a permanent nuisance effecting permanent injury to the appellee's land. From the construction of the sewer the use of the sewer has continued in the same manner and to the same extent during the whole period from the beginning of its operation to the institution of the suit. It was the structure of the sewer that created a permanent status of injury to the premises from the beginning of its operation; the subsequent odors and conditions arose as a necessary consequence of the construction and operation of the sewer. As the structure was permanent and became a continuing nuisance from the beginning of its operation, the depreciated market value of the appellee's property was susceptible of ascertainment when the use of the sewer began in September, 1913; and the statute of limitations began to run from that time. Railway Co. v. Graham, 12 Tex. Civ. App. 54, 33 S. W. 576; Lyles v. Railway Co., 73 Tex. 95, 11 S. W. 782; De Geofroy v. Railway Co., 179 Mo. 698, 79 S. W. 386, 64 L. R. A. 959, 101 Am. St. Rep. 524; Sutherland v. Railway Co., 108 S. W. 969; Abilene Light & Water Co. v. Clack, 58 Tex. Civ. App. 129, 124 S. W. 202; Perry v. Railway Co., 162 S. W. 1185.

The case of Railway Co. v. Goldman, 8 Tex. Civ. App. 257, 28 S. W. 267, was upon facts showing that the damage was not occasioned by the immediate construction of the ditch, but from consequential effects of the erection of the ditch. And the other cases cited in the brief follow the same rule as to consequential injuries. This instant case does not, it is thought, come within that class of cases. It is believed that there was error in allowing a recovery for the depreciation in the market value of the land, because such recovery was barred by limitation.

It is contended by appellant, by appropriate assignments of error, that neither the death of Grady McCracken nor any of the sickness on account of which the plaintiff recovered proximately resulted from the things complained of by plaintiffs. The jury made the findings of fact that the sickness and death of Grady McCracken, and the sickness of the other members of the family, were caused from the operation and maintenance of the septic tank and its working condition. There is evidence showing that the stench and odor and excreta from the outflow of the tank was offensive and disagreeable. Plaintiff testified:

"As to the effect this had on my house at nights, will say it has been awful, one couldn't hardly describe it, and especially in the summer time. Frequently on account of the odors and stench we just close the doors and windows and sit there and endure the heat to keep the odors out of the house."

And while it appears that Grady McCracken died of meningitis, it further appears from the testimony of Drs. Travis, Canon, and Fuller, each, that the meningitis germ is brought about by an unsanitary condition, and that "it is generally believed by the medical profession that any unsanitary condition might bring about meningitis."

[3] It is believed, in view of all the evidence, that it may not be said by this court as a matter of law that the unsanitary condition created by the operation of the tank was not the producing cause of the death and sickness in evidence, and that the court properly passed the decision of the question to the jury. And it may not be said, it is concluded, that the amount awarded plaintiff for the death of his son Grady was not authorized by the pleading and evidence.

By what has been said we have disposed of the assignments of error submitted by appellant, and, except as to the question of limitation, find no reversible error. The action for the recovery for the permanent depreciation in the market value of the land being barred, as concluded, by limitation of two years, that portion of the judgment allowing a recovery for the damages to the land is reversed, and judgment is here entered in that respect for the appellant.

The judgment of the trial court will otherwise be affirmed. The costs of appeal are taxed against appellee.