## TRINITY PORTLAND CEMENT CO. v. HORTON et al. (No. 1490.)

(Court of Civil Appeals of Texas. Amarillo. May 14, 1919. Rehearing Denied June 18, 1919.)

1. LIMITATION OF ACTIONS ⊚⟼55(5)—TRESPASS.

In trespass a right of action arises when the cause is created, and the statute of limitations is put into operation when plaintiff's inclosure is invaded.

2. LIMITATION OF ACTIONS ⊚⟼55(6) — NUISANCE.

In action in the nature of a nuisance in which there has been no actual invasion of plaintiff's land, the first right of action does not arise until some injury has been suffered, no matter when the cause of injury occurred.

3. ACTION ⊚⟼30 — FORMS AT COMMON LAW — TRESPASS—NUISANCE.

At common law the breaking of the close of another would give an action in trespass, while for creating a nuisance the action would be case.

4. LIMITATION OF ACTIONS ⊚⟼55(6) — NUISANCE.

Though plaintiffs delayed for ten years in suing for damages caused by dust which, when the wind was in certain directions, was carried from defendant's cement plant onto their premises, held, that the nuisance could not be considered a permanent one because the structure was permanent, so as to bar plaintiff's right of action by limitations.

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Action by Mrs. L. L. Horton against the Trinity Portland Cement Company, which was consolidated with an action by R. M. Horton against the same defendant. Judgment for plaintiffs, and defendant appeals. Affirmed.

Thompson, Knight, Baker & Harris, of Dallas (J. Hart Willis and Alex F. Weisberg, both of Dallas, of counsel), for appellant. S. C. Lewis, of Dallas, for appellees.

HUFF, C. J. This is an appeal from a judgment rendered in a consolidated cause, by agreement of all parties, upon one action brought by Mrs. L. L. Horton, December 4, 1916, and prosecuted to judgment upon an amended petition filed September 27, 1917, and also an action by R. M. Horton filed on the same dates as that of Mrs. Horton. The action is based upon an alleged nuisance created by appellant, the Trinity Portland Cement Company. For the purpose of this opinion it will suffice to state that the appellees alleged they owned a tract of land, approximately 200 acres, lying about one-fourth to one-half mile of appellant's cement manufacturing plant; that in the operation of the plant and in the manufacture of cement there were created large quantities of dust, etc.; that this dust, during certain seasons of the year and when the wind was in certain quarters, would blow away and upon the appellees' property, impairing the rental value of their land and injuring the crops thereon, rendering the occupancy of the property disagreeable and uncomfortable; and that such cement, dust, dirt, gases, and elements seriously affected the eyes, lungs, and the comfortable enjoyment of the premises by the appellees and produced great annoyance and inconvenience. The damages alleged were to the crops grown on their land and for personal inconvenience during the two years preceding the filing of the amendments. The appellant, in answer, alleged that for more than ten years it owned and operated the plant in question, and that it had been, during the years, a permanent business, occupying the same premises and operating in the same manner night and day; that it during that time had a very large substantial and extensive business, permanent in character, employing hundreds of employés; that the dust, etc., had not been intermittent or dependent upon any accident or contingencies. The appellant then pleaded the two years' statute of limitation as a defense in bar of the appellee's cause of action. The jury found no damages for rental value of the land or to the injury of crops grown on the appellee's land, but found that Mrs. L. L. Horton had been damaged $300 and R. M. Horton $200, between January 1, 1915, and September 26, 1917, by being seriously and materially interfered with in the comfortable enjoyment of their homes and premises, and annoyed, inconvenienced, and injured in their person by the operation of the cement plant between those dates. The facts show that the plant was completed upon appellant's tract of land in 1908, and had been constantly operated from that period up to the trial, day and night; that it is and had been during that time a costly and substantial structure, employing some 200 men; and that its output of the products was large per day. The appellees' land is about one-fourth of a mile from the plant and north. The testimony will warrant the finding that when the wind is from the south the dust, etc., falls on the land and homes of the appellees. When from the north it does not do so, or perhaps from other quarters; that in dry weather it falls on the land, but in wet it does not do so to so great an extent, if at all. The evidence also shows that the appellant uses what is known or termed the dry process in the manufacture of cement. There appears to be another process known as the wet, and there is some evidence to the effect that if the wet process is used the dust would not reach the premises of the appellee. The president of the Texas Cement Plant, an-

⊚⟼For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

other company, testified his company had changed from the dry to the wet process; that they thought the wet process practically eliminated the dust; and that they adopted that process for that purpose. The appellant requested the court to instruct a verdict for it, and the assignments presented are based upon the refusal to so instruct, presenting propositions that under the pleadings and facts the cause of action was barred by the statute of limitations and that limitation began to run at the completion of the plant on appellant's land, or at least upon the first injury.

[1-4] The only question presented for our determination is whether the cause of action on which a recovery was had is barred by the two years' statute of limitation. The damages sued for and recovered were for personal discomfort, annoyance, etc., suffered within the two years next before the institution of the suit. The cause of action set up is for damages resulting from a nuisance. The brief of appellant admits the operation of its plant created a nuisance. That fact being established, the rules of law as to the accrual of damages resulting from nuisance must control. Apparently, at least, there appears to be some confusion among the many decisions of the various courts, and ours as well as others, as to when the cause of action accrued. We believe much of the trouble lies in not keeping in mind the clear distinction between a trespass and a nuisance. In trespass a right of action arises when the cause is created. The statute in trespass is put in operation at the date of the construction of the building or thing which actually invades the close of the complaint. Houston Waterworks v. Kennedy, 70 Tex. 233, 8 S. W. 36; Lyles v. Railway Co., 73 Tex. 95, 11 S. W. 782; Paris v. Allred, 17 Tex. Civ. App. 125, 43 S. W. 62. In actions in the nature of a nuisance in which there has been no actual invasion of plaintiff's land, as a general rule, the first right of action does not arise until some injury has been suffered, no matter when the cause of injury occurred. Railway Co. v. Anderson, 194 S. W. 662; Southwestern Portland Cement Co. v. Kezer, 174 S. W. 661; Railway Co. v. Goldman, 8 Tex. Civ. App. 257, 28 S. W. 267; City of Houston v. Railway Co., 26 Tex. Civ. App. 228, 63 S. W. 1056; Grossman v. Railway Co., 99 Tex. 641, 92 S. W. 836. At common law the breaking of the close of another would give an action in trespass. For creating a nuisance the action would be case. In the action of trespass the grievance charged is the breaking and entering the complainant's close, and the offense is completed when the breaking and entry takes place, for which nominal damages are at least recoverable, whether there are any actual damages shown. For injury suffered by a nuisance the suit cannot be predicated upon entering the complainant's close. The

gravamen of the action is the injury, as distinguished from the cause of the injury; hence no cause of action arises until injury has been suffered. Again, the determination of the question as to whether there is a right to but one action or a right to successive actions depends upon whether the cause of the injury is permanent or temporary, and upon the character of the injury. "In the early decisions and the better recent opinions, a permanent legal structure means a legally nonabatable structure. By a legally nonabatable structure the courts usually mean a structure if erected by an individual would be illegal and abatable, but being erected by one that has the power of eminent domain it could be made legal by condemning the property that it injures or the right that it infringes." But other cases "make the question of permanency of the structure depend almost wholly upon its physical characteristics." Note at page 1011 et seq., L. R. A. 1916E. The annotator cites this state as holding to the latter view, citing in a note thereunder Comminge v. Stevenson, 76 Tex. 642, 13 S. W. 556; Baugh v. Railway Co., 80 Tex. 56, 15 S. W. 587. We do not think the cases cited support the author in so placing this state. Those cases, as we read them, hold that depreciation in the value of land is not the proper measure of damages where a nuisance was created by certain acts or conduct which were of a transitory nature. In the latter case it was said:

"When a nuisance is created by the construction of works in their nature permanent, and which, as sometimes occurs in cases of works of public use and not subject to be abated, the rule is that all damages resulting therefrom to property may be recovered in one action, and the proper measure of damages is depreciation in the value of the property."

Such, as we understand, is also the holding in Rosenthal v. Railway Co., 79 Tex. 325, 15 S. W. 268. In Rainey v. Railway Co., 99 Tex. 276, 89 S. W. 768, 90 S. W. 1096, 3 L. R. A. (N. S.) 590, 122 Am. St. Rep. 622, 13 Ann. Cas. 580, the facts establish that the acts charged, if done by an individual or a corporation in pursuit of a private business, would have created a nuisance. The structures of which complaint was there made were machine shops, etc. The court held that while the railroad had the right to condemn for such purposes the Legislature did not confer upon a railway the power to arbitrarily, and without regard to any injury that might be inflicted upon others, so establish such works. "Before it can be held that the Legislature intended to legalize a nuisance, it must appear that the statute either pointed out the place at which the objectionable structures and works were to be built and operated, or left to the corporation the power to make arbitrarily the selection." Railway Co. v. Shaw, 99 Tex. 559, 92 S. W.

30, 6 L. R. A. (N. S.) 245, 122 Am. St. Rep. 663, is a case where the statute authorizes a railroad to select and establish its depot, sidings, etc. The complainant there sued for depreciation of her residence and for personal discomfort. The court held she could not recover for discomfort, saying there is evidence of discomfort to plaintiff in her home. If this were enough to make out a case for such damages, the verdict could not be set aside. In that case the Court of Civil Appeals had affirmed the judgment, citing as authority therefor Daniel v. Railway, 96 Tex. 327, 72 S. W. 578; Railway Co. v. Anderson, 36 Tex. Civ. App. 121, 81 S. W. 781; and Railway Co. v. Mott, 98 Tex. 91, 81 S. W. 285, 70 L. R. A. 579, is also cited. The Supreme Court said:

"Those cases rest upon the doctrine of nuisances; the fundamental proposition underlying all of them being that there had been unnecessary and unreasonable uses by the defendants of their property to the injury of the plaintiffs, consisting in the location of the stock pens, coal chutes, yards, etc., there in question, which the defendants could have located elsewhere, as not to unreasonably and unnecessarily interfere with the plaintiffs' use and enjoyment of their property. The underlying idea was that inasmuch as the particular location of those structures by the defendants was in no way regulated or controlled by law, the unreasonable location to the injury of others had not been legalized, but constituted nuisances."

But in the case then in hand the location of the depot, siding, etc., was necessary, and the road did no more than that authorized by law.

"In other words, for the public good, its action in these regards, so long at least as it was only a reasonable exercise of the privileges granted, was made lawful; and any incidental damages resulting to members of the public, beyond that caused to their property, against which they are protected by the Constitution, is to be regarded as damnum absque injuria, which must be borne because the work which inflicts it is authorized by law for the general welfare."

The principles above announced are again, in some measure, discussed in Grossman v. Railway Co., 99 Tex. 641, 92 S. W. 836. We refer to the above cases and quote from them for the reason that we think they establish that in this state "a permanent structure means a legal, nonabatable structure." See, also, Sherman Gas, etc., v. Belden, 103 Tex. 59, 123 S. W. 119 27 L. R. A. (N. S.) 237. Where a structure, however substantial or permanent it may be as to its physical characteristics, is not legally established or for the public welfare, if it is or becomes a nuisance it is abatable. The reason underlying the right to recover damages for injury caused by nuisance is to procure its abatement. It is apparently the theory that one will not maintain a continuing nuisance which is subject to successive suits for recurring injury.

Perhaps it was unnecessary to discuss the above principles, as our Supreme Court, in a case the essential facts of which are identical with the facts of this case, we believe settled the question adversely to appellant's contention. The Supreme Court there cites Austin v. Anderson, 79 Tex. 427, 15 S. W. 485 (23 Am. St. Rep. 350), and then says:

"The electric light plant was not situated upon Parsons' land. Its existence or operation did not necessarily create a nuisance to plaintiff; it was only when the wind carried the smoke and cinders onto the premises that damage was caused. The court said in that case, 'The embankment and culverts were permanent, but the nuisance was not.' So in this case the electric light plant, its buildings, and machinery were permanent and continuing, but smoke, cinders, etc., the nuisance which caused the injury, were not continuous. That case and this rest upon the same principles of law."

It is also held therein that recovery for nuisance is had upon the injury. Parsons v. Uvalde Electric Light Co., 106 Tex. 212, 163 S. W. 1, L. R. A. 1916E, 960; Town of Jacksonville v. McCracken, 197 S. W. 309. See, also, Webb v. Virginia-Carolina Chemical Co., 170 N. C. 662, 87 S. E. 633, L. R. A. 1916E, 971.

We believe the trial court correctly refused to instruct a verdict as requested. The judgment will be affirmed.