CITY OF PARIS V. W. R. ALLRED.

Delivered October 16, 1897.

**1.  Damage to Land from Sewerage—Permanent Injury.**

Damages to land are properly allowed on the theory that they are permanent where a city sewer is constructed so as to empty into a stream of water flowing through the land, rendering it unwholesome, and the sewer was constructed with the intention that it should be permanent, and has been so treated ever since its construction.

**2.  Same—Measure of Damage.**

The measure of damage for a permanent injury to land by the deposit of filth and sewerage into a stream of water flowing through it, is the resulting depreciation in the value of the property, and the whole damage may be recovered at once.

**3.  Same—Incidental Damage—Sickness.**

Expenses paid by an owner of land for medicine, physicians' bills, and loss of time from sickness caused by the wrongful deposit of sewerage in a stream of water flowing through his land, and used for stock and domestic purposes, constitute a part of the damages that may be recovered.

APPEAL from Lamar.   Tried below before Hon. E. D. McCLELLAN.

*W. E. Latimer* and *Hale & Hale,* for appellant.—The true measure of damage in this case is the value of the land with and without the sewer; or the value of it after the construction and operation of the sewer, and what it would be worth at the same time if no sewer had been constructed. Railway v. Fuller, 63 Texas, 467-472; 2 Sedg. on Dam., 8 ed., sec. 947; Baugh v. Railway, 80 Texas, 57.

*Fagan & Brents* and *W. F. Whitten,* for appellee.—1.  In this case the measure of damages to the land is the difference of the value of the land without the nuisance maintained upon it as caused by the sewer, and the value of the land with the nuisance maintained upon it.   Rosenthal v. Railway, 15 S. W. Rep., 268; 3 Sedg. on Dam., 8 ed., sec. 947; Bonner v. Wiggins, 52 Texas, 125.

2.  A nuisance or injury to lands that is continuing and constant in its nature, and unavoidable by the damaged party, is a permanent injury, and can be so treated by the party damaged.   15 S. W. Rep., 268.

RAINEY, ASSOCIATE JUSTICE.—The following statement taken from appellant's brief is substantially correct, and the same is adopted:  Appellee brought suit against the city of Paris for the recovery of $5000 damages, $4000 of which is for damage to his land, and $1035 as special damages; on account of loss of grass and pasturage, $20; loss of water, $500; cost of medicine, $15; doctor's bills (in two items), $45; value of nursing, $15; loss of time, $165; medicine, $10; digging pool, $50; building fences, $35.  Plaintiff alleged that he owned a tract of land near the city of Paris, of the value of $4000, on which he resided with his family, as his home; that the city of Paris, in 1894, having the authority so to do, built and extended a sewer through part of the city, under ground, and

emptied it into Baker's branch, within about a mile of, and above plaintiff's land, through which sewer large quantities of human excrement, urine, and other filth was emptied into Baker's branch, and emptied therein about one mile above plaintiff's land; that said branch and the water therein passed over part of plaintiff's land, and that large quantities of human feces, urine, and other filth was thereby deposited on his land; that by reason of which the water in said branch, which had before been good and wholesome water for both man and beast, was polluted, rendered filthy, unwholesome, noxious, and unhealthy, totally unfit for use, and rendered a nuisance; that nauseous vapors and noxious smells were cast over plaintiff's land, and into his residence on said land, which residence was some distance from said branch; that it caused him and his family to be sick and incur doctor's bills and expending of money for medicine, the loss of stock water in said branch, loss of the use of grass growing on his land, expense of digging a pool for watering his stock, and fencing the stock away from said branch—making an aggregate damage of $5000.

Defendant answered, setting up that it built said sewer under and by virtue of authority granted to it by its charter; that it was a municipal corporation; and it was for a public good, in which the city had no interest, or income, except to subserve a public purpose, nor did it receive from said sewer any emolument or other income, but was at the expense of operating the same for the public good, and that the sewer was constructed in the most careful and approved manner, and so operated, and that it had been guilty of no negligence in its construction or operation, and that the same was perfect, and entirely faultless, both in construction and operation.

After a demurrer and special exceptions, defendant filed a general denial; and pleaded specially that the city council had determined that the branch known as Baker's branch was the only proper or available outlet for sewerage from the city; that the sewer was underground, draining part only of the city; and that it carries off much of the surface drainage of the city, which would otherwise go into said branch over the surface; and that the sewer does not drain more than one-fifth part of the city, for which Baker's branch has always been the natural outlet; and that a large part of the city, not drained by the sewer, is drained into said branch over the surface above and below said sewer, constituting the larger portion of the filth which goes into said branch, specifying the sources of such filth—enumerating depots, oilmills, water-closets, stockpens, slaughter-grounds, etc.; that said sewer is a public necessity, tends to promote the health and comfort of the citizens, greatly lessens the noxious vapors detrimental to the health of the public.

Alleged that plaintiff, if the water in Baker's branch was so polluted that the water is unfit for the use of stock, at a very moderate expense, could have prevented his stock from drinking it, and could have dug a pool which would furnish ample supply for his stock water; that he had

the opportunity and authority to do it, but willfully failed to do it, though amply able to do so.

Also alleged that plaintiff does not own the land which he claims to have been damaged, but has in effect only a title bond, and that he has paid but little, if anything, on it, and there is a vendor's lien on it to secure the payment of the purchase money, and that the equitable title is in his vendor, and prayed that plaintiff take nothing by his suit, that the injunction asked for by plaintiff be denied, for costs, etc. Upon trial of the cause there was a verdict and judgment for plaintiff for: Actual damage to land, $731.25; loss of time in sickness of plaintiff, $90; medicine and doctor's bills, $52.75; digging pool, $35; total, $909.

*Opinion.*—We conclude that the evidence established the allegations of plaintiff's petition as to permanent damage to his land, and is sufficient to support the verdict of the jury on that issue.

The main question in the case to be determined is whether or not the cause of the nuisance is permanent in its character, and entitles plaintiff to recover all the damages that he has or may sustain, in one suit; or whether the nuisance is temporary in its nature, and entitles plaintiff to recover only such special damages as may have accrued up to the time of suit. . .

The principle underlying the case of Rosenthal v. Railway, 15 Southwestern Reporter, 268, is applicable to this case. In that case Justice Gaines, speaking for the court, says: "When the injury is liable to occur only at long intervals, or when the nuisance is likely to be removed by any agency, the damages which have accrued only up to the time of the action will be allowed; but if the nuisance is permanent and the injury constantly and regularly recurs, then the whole damage may be recovered at once. In a case like this the resulting depreciation in the value of that property is the safest measure of compensation."

We think it clear from the evidence in this case that the damages to appellee's land result from a cause permanent in its character. When the sewer, the cause of the injury, was constructed, it was evidently intended by the city authorities that it should be permanent, and it has been so treated and used ever since. As long as the sewer is used, just so long will the nuisance be constant and continuous, and injurious to appellee's land. No move has been made by the city authorities to abate the nuisance, and the evidence showing the same to be permanent, the appellee is entitled to recover all the damages that have or may accrue by reason of the nuisance, the measure of which is the depreciation in the value of the land by reason of said nuisance.

The fourth paragraph of the court's charge is objected to by appellant on the grounds: first, that it assumes that the injury to plaintiff's land, if any, was permanent; and second, that it is "indefinite, vague, and uncertain, and was calculated to mislead, in that no time is fixed in which to determine the value of the land without the sewer, but leaves the jury to fix it at the time it was highest, without regard to any depreciation

which may have existed at the time the sewer was constructed, or at any times previous thereto—from any and all other causes; but does fix the time of valuing the land in getting its lowest valuation after the sewer was constructed."

As to the first ground of objection to said charge, we are of opinion that the evidence was of such character as to warrant the court in assuming that the injury to the land was permanent; and therefore not error.

Nor do we think the charge subject to the second objection urged. While the charge might have been more explicit, it was clear enough not to have misled the jury. The evidence in relation to the depreciation in value of the land was directed only to the depreciation caused by the construction of the sewer; and the jury could not have well understood that they were at liberty to be governed by any other rule; and, considering the evidence and size of the verdict, they evidently did not so understand.

In addition to the injury to the land, we think appellee was entitled to recover the amount expended by him for medicine, physicians' bills, and loss of time by reason of sickness necessarily caused by reason of the nuisance; but we think the verdict and judgment as to the amount paid for medicine and physicians' bills excessive, as the evidence does not show over $26 expended by appellee for those purposes.

The court erred in instructing the jury that they could find a verdict in favor of appellee as to the other items of special damage, as these items were not recoverable—not coming within the measure of damages where the nuisance is permanent.

The verdict and judgment show the amount of special damages awarded, and this error does not necessarily require a reversal of the judgment. If appellee will, within twenty days, remit the sum of $61.75, being $35 for digging pool, and the excess for medicine and physicians' bills, the judgment will be reformed and affirmed; otherwise it will be reversed and the cause remanded.

Other assignments of error are presented, but they are without merit and will not be considered.

*Remittitur entered and judgment affirmed.*

Writ of error refused by Supreme Court.