## CITY OF GRAHAM v. MOSELEY.*
### (No. 10308.)

(Court of Civil Appeals of Texas. Ft. Worth. June 2, 1923. Rehearing Denied June 30, 1923.)

1. **Appeal and error ☞1062(2)—Refusal to submit question of proximate cause of contamination of water held not prejudicial error.**

In a suit for damages to plaintiff's stock and premises from negligent construction and maintenance of defendant city's sewer system emptying into a creek passing through plaintiff's land, refusal to submit question whether contamination of the creek waters was the proximate cause of the damage, instead of submitting question as to what caused the damage, held not prejudicial error, where the evidence supported finding defendant's negligence caused the damage and the evidence of other sources of contamination was not sufficient to show pollution to the extent shown.

2. **Trial ☞350(5)—Issue of proximate cause material only when evidence shows two or more causes either of which may cause injury complained of.**

The issue of proximate cause and the determination thereof can only be material when the evidence shows two or more distinct causes from either one of which the injury complained of might independently result.

3. **Waters and water courses ☞76—Damages inflicted by temporary nuisance in pollution of water measured by damages inflicted within two years preceding trial.**

In cases of a temporary and removable nuisance by pollution of water caused by a sewerage system, the measure of damages is that which has been inflicted within two years preceding the trial, and not the depreciation in the value of the premises at the time of the construction of the work which occasioned the nuisance.

─────────────────────────────────────

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error dismissed for want of jurisdiction October 17, 1923.

**4. Appeal and error ⚖61071(1) — Findings though conflicting held not to require reversal in view of pleadings and evidence.**

Findings that plaintiff's dwelling was damaged in the amount of $920 and that his land and premises had not been permanently injured, though conflicting, *held* not to require reversal in view of pleadings and evidence to support allegation of depreciation in rental value of premises, and to be construed as a finding that the rental value of plaintiff's house had been depreciated in the amount of $920.

**5. Nuisance ⚖650(2) — Measure of damages stated.**

If the nuisance is of an occasional or temporary character, the measure of damages is the difference in the rental value of the premises before and after the injury, and, in assessing damages for the maintenance of a nuisance in the neighborhood of a residence or dwelling, the jury may look to such injury as occurs to the use of the property as a residence, taking into consideration the discomfort and annoyance to the owner.

On Motion for Rehearing.

**6. Negligence ⚖661(2)—Liability of original wrongdoer continues notwithstanding concurring act of third person.**

Where the act or neglect of a third person concurs with that of an original wrongdoer, both being efficient causes in producing the injury, the liability of the original wrongdoer continues, and the same is true if the negligence of the wrongdoer concurred with some accidental cause to which the injured party had not contributed.

Appeal from District Court, Young County; H. R. Wilson, Judge.

Action by B. G. Moseley against the City of Graham. Judgment for plaintiff, and defendant appeals. Affirmed.

Penix, Miller & Perkins, of Mineral Wells, L. A. Kayser, of Graham, and Theodon Mack, of Fort Worth, for appellant.

Stine & Stine, of Henrietta, and Taylor & Taylor, of Wichita Falls, for appellee.

CONNER, C. J. This is an appeal from a judgment in appellee's favor, aggregating $1,600 as damages to his stock and premises caused by the alleged negligent construction and maintenance of a sewer system in the city of Graham. The appellee alleged that he owned and resided on a stock farm, consisting of about 455 acres, situated about one and a half miles in a southerly direction from the courthouse in the defendant city; that through said property passes what is known as Salt creek, which he claimed to be the sole source of his water supply for his stock; that the sewage and sewage disposal plant of said city empties into said creek above the plaintiff's land and pollutes and spoils the water of said creek to such an extent that offensive odors arise there-from; that the water was so polluted as to become wholly unfit for stock or domestic use, and that as a result 45 hogs, 26 goats, 85 sheep, and one cow had died; that the appellee's fishing rights had been destroyed and the value and use of the occupation of plaintiff's premises damaged, for all of which damage the recovery was sought.

The answers of the city need not be detailed further than to say that they consisted of a general denial and a plea to the effect that appellant's hogs had died as a result of diseases contracted by reason of feeding them swill gathered by plaintiff in the city of Graham.

The case was submitted to a jury upon special issues, in answer to which the jury found, stating it, in so far as it is necessary to state, in a narrative form, that the sewage from defendant's disposal plant polluted and contaminated the water in Salt creek on plaintiff's land in September or October, 1920; that such pollution and contamination of the water rendered it unfit for stock water and domestic purposes and produced the death of 25 head of goats of the value of $75, 85 head of sheep of the value of $425, one cow of the value of $80, and so contaminated the air on the plaintiff's premises as to render it unfit and as to interfere in material respects with the comfort and enjoyment of the same as a dwelling place for the plaintiff and his family; that the value of said dwelling as a place to live in had been damaged to the extent of $920, but that plaintiff's land and premises had not otherwise been permanently injured or damaged. The jury further found that the hogs, for the value of which the plaintiff sued, died from hog cholera, arising from the swill fed to them by the plaintiff and therefore found no damages on this account. There was evidence that the defendant city was constructing a new sewer plant, which, in answer to a special issue submitted, the jury found would not, when completed, render the waters of Salt creek unfit for stock or domestic purposes. The jury also found that the fishing rights of the plaintiff in Salt creek, for which he sued, had been destroyed for two years to the plaintiff's damage of $50 per year. Upon this verdict the court rendered judgment in appellee's favor as stated, and the defendant city has appealed.

The assignments of error and propositions presented in behalf of appellant are quite numerous, and we shall not undertake to take them up and dispose of them seriatim, but will endeavor to dispose of the material questions involved which are presented in the varying forms of the appellant's propositions and assignments.

[1, 2] One of the most insistent objections appellant makes to the judgment below is that the court failed to submit to the jury

⚖For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the question of whether the contamination of the waters of Salt creek was the proximate cause of the damage to plaintiff's stock and premises, and that such issue was not determined by the jury. But the evidence has been carefully considered, and we feel that we must say that it undoubtedly shows a very serious pollution and contamination of the waters of Salt creek upon the stock farm of appellee; that the stock enumerated in the findings of the jury drank of the waters and died therefrom as alleged; that the odors arising from such contamination was at times offensive, rendering plaintiff's premises materially uncomfortable as a place of residence; that the contamination of such waters was such as to cause the fish in Salt creek to leap out of the waters upon the bank and die by the hundreds, causing plaintiff's complete abandonment of his former efforts of seining for fish; and if there was any other cause for such condition and the death of plaintiff's stock it is not disclosed by the evidence. It is true in answer to special issues submitted to the jury it was found that the waters had also been polluted from other sources, but appellant has not pointed out in its brief the evidence, if any, which supports such a finding, and in our examination of the statement of facts we have not discovered any evidence that points out any one or more specific things that could have contaminated the waters of Salt creek to the extent shown. So that we fail to see any prejudicial error in refusing to submit the issue of proximate cause. Such issue and determination thereof can only be material when the evidence shows two or more distinct causes from either one of which the injury complained of might independently result. Here, at most, if other causes of contamination existed it must have operated concurrently with that resulting from the negligence and fault of the city in an improper construction or maintenance of its sewage plant, and of the sufficiency of the evidence to support this issue in favor of appellee there can be no reasonable doubt, one of appellant's own witnesses stating, in effect, that the sewerage system in operation was at times overloaded and insufficient to dispose of the sewage of the city. What "caused" the death of plaintiff's cattle and the injury to his premises as a dwelling place was submitted and found by the jury, as we have seen, and we think that under the evidence this was sufficient, at least the failure to more specifically submit the issue resulted in no material injury to appellant.

[3] Complaint is made that the appellee's cause of action was barred by limitation, the evidence showing that the present sewage disposal plant was placed in operation during the years 1916 and 1917. The evidence, however, shows that at that time the city of Graham had less than one-half the number of inhabitants that it had at the time of the injury complained of, and the verdict of the jury, when considered as a whole, evidently is to the effect that the nuisance was but of a temporary character and not permanent, and that the injuries occurred in 1920 and 1921, within two years of the filing of plaintiff's original petition. We think the rule is that in cases of a temporary and removable nuisance, such as here presented, the measure of damages is that which has been inflicted within two years preceding the trial, and not the depreciation in the value of the premises at the time of the construction of the work which occasioned the nuisance. See 20 R. C. L. p. 469, par. 86; Ry. Co. v. Frederickson (Tex. Sup.) 19 S. W. 124; Rosenthal v. Taylor, B. & H. Ry. Co., 79 Tex. 325, 15 S. W. 268; City of Paris v. Allred, 17 Tex. Civ. App. 125, 43 S. W. 62.

[4, 5] It is insisted also that the findings of the jury, to the effect that plaintiff's dwelling as a place to live in was damaged $920 and that his land and premises had not been permanently injured, are inconsistent, and that neither will support a judgment against the other. It may be true, and is true, we think, that the dwelling house upon plaintiff's land and in which he had lived many years was a fixture upon the land and as such a part of it, and hence a finding that the land and premises had not been permanently injured would include a finding that the dwelling was not permanently injured. In the case of Daniels v. Wright, 249 S. W. 455, it was held by our Commission of Appeals that findings made by the trial court must be construed in the light of pleadings and the proof in the case, and when this is done and there is no uncertainty as to their meaning they are to be followed. Applying this rule, we think the conflict in the findings complained of have not resulted in any damage to appellant or in any uncertainty as to the real meaning of the jury's findings. While appellee alleged that his premises had been permanently injured and he introduced testimony tending to prove large permanent injury to his stock farm, he also alleged and introduced proof supporting the allegation that the rental value of his premises had been depreciated during the time complained of in a sum in excess of that found as damage to his dwelling house, and construing the verdict as a whole and the allegations and evidence, as it seems to us the findings of the jury that the plaintiff's dwelling place was damaged $920 was meant by them, and evidently so considered by the trial court, as a finding that the rental value of such house had been depreciated during the period involved to the extent found, and if this is a true construction of the verdict, appellee would be clearly entitled to the damages awarded. See Donovan v. Royal, 26 Tex.

Civ. App. 248, 63 S. W. 1054, and 20 R. C. L. p. 470, § 86, cited above, where it is said:

"If the nuisance is of an occasional or temporary character, the measure of damage is the difference in the rental of the premises before and after the injury. The diminution in the value of the fee in the land is not a proper test in such case. In assessing the damages for the maintenance of a nuisance in the neighborhood of a residence or dwelling, the jury may look to such injury as occurs to the use of the property as a residence, taking into consideration the discomfort and annoyance which the owner has suffered from the nuisance. It has been held that in fixing the amount of damages to be awarded in such a case, proof of depreciation in rental value of the dwelling house, caused by such nuisance, may be looked to as furnishing a proper evidentiary guide for determining the extent of the annoyance and discomfort actually suffered."

We accordingly conclude that appellant's contention that there is such conflict in the findings of the jury as are prejudicial, or as requires a setting aside of the judgment, must be overruled.

The remaining assignments which question the rulings of the court in admitting testimony, in refusing special issues, the form of issues submitted, and the sufficiency of evidence to sustain the findings have all been considered, but we find no material error in these respects requiring a reversal of the judgment. Such assignments will therefore all be overruled and the judgment affirmed.

### On Motion for Rehearing

Appellant with increased vigor renews its attack upon special issue No. 1, as submitted by the court, and the ruling of the court in refusing a special issue requested by appellant designed to supply an alleged defect in the special issues submitted, and in deference to the earnestness with which the complaint is made we will discuss the question more at length than we did in our original opinion.

Special issue No. 1, submitted to the jury, is as follows:

"Did the sewage from the defendant's disposal plant pollute and contaminate the water in Salt creek on plaintiff's land?"

The jury answered this issue in the affirmative. Appellant objected to its submission "for the reason that the court has not defined or set out the amount of pollution or contamination which would bring about the damage to the plaintiff and premises." The point at issue being "whether or not such pollution and contamination is sufficient to cause the injuries complained of by the plaintiff in this cause."

The special issue requested to be submitted in lieu of said special issue No. 1 reads thus:

"Did the sewage from the defendant's disposal plant pollute and contaminate the water on plaintiff's premises to the extent to render same unfit and unsafe for stock water, or to cause plaintiff any injury named and set out in this petition?"

Appellant in its motion quotes the testimony of a number of witnesses, to the effect that from open closets and otherwise in portions of the city of Graham not served by the sewage plant the waters of Salt creek were also polluted, but no witness as we interpret the testimony undertakes to define the extent or degree of the pollution so caused. It cannot be said, therefore, that the evidence raises the issue of damage arising from a cause entirely independent of the sewage plant. There was abundant evidence of pollution caused by the operation and maintenance of the sewage plant complained of, and the court submitted special issue No. 3, reading as follows:

"If you have answered special issue No. 1, 'Yes,' then answer whether or not such water was rendered unfit for stock water and domestic purposes."

And also, special issue No. 4, reading as follows:

"If you have answered special issue No. 1, 'Yes,' then state whether or not said water caused or produced the death of any of the plaintiff's stock."

[6] Both of these issues were answered in the affirmative, from which it is reasonable to infer that the water from Salt creek was so polluted by the operation and maintenance of the sewerage system as to at least constitute a wrongful contributing cause of the death of plaintiff's stock and of the obnoxious odors complained of. The extent of the pollution therefore appears, and under the evidence, as presented to us, it seems immaterial to ascertain the extent to which the waters may have been polluted by extraneous closets, for under such circumstances it is no defense to the city to say that the wrong of others concurred with its own. The rule of torts is that where the act or neglect of a third person concurs with that of an original wrongdoer, both being efficient causes in producing the injury, the liability of the original wrongdoer continues, and the same is true if the negligence of the wrongdoer concurred with some accidental cause to which the injured party had not contributed. See 38 Cyc. 458, and the numerous cases cited in note 20, including the case of Railway Co. v. McWhirter, 77 Tex. 356, 14 S. W. 26, 19 Am. St. Rep. 755, in which it is said:

"If an accident occurs from two causes, both due to negligence of different persons, but together the efficient cause, then all the persons whose acts contribute to the accident are liable for an injury resulting, and the negligence of one furnishes no excuse for the negligence of the other."

In other respects we find nothing in the motion that we think requires additional discussion, and we hence overrule it upon all points presented.