**CITY OF LUBBOCK, Appellant,**

v.

**Loyd TICE, Appellee.**

**No. 8462.**

Court of Civil Appeals of Texas, Amarillo.

Dec. 23, 1974.

Fred O. Senter, Jr., City Atty., James P. Brewster, Lubbock, for appellant.

John F. Maner, Maner & Nelson, Lubbock, for appellee.

ROBINSON, Justice.

In this suit, sounding in nuisance, the trial court entered judgment on the verdict for damages to plaintiff's real estate caused by defendant City's operation of a sanitary landfill. Affirmed.

The City of Lubbock, Texas, began operation of a sanitary landfill on or about May 17, 1971. The landfill is located on a half section of land lying to the north of the City of Lubbock. The plaintiff, Loyd Tice, is the owner of property which is just off the southeast corner of the landfill. Mr. and Mrs. Tice bought the property, a five acre tract with a dairy barn and a little three-room house, in 1959. They moved on a two bedroom house shortly thereafter. In 1968, they moved on a three bedroom ready-built home and added to it a utility room and bath. The City began the landfill operation about three years after they moved their present home onto the property. The life of plaintiffs' improvements stipulated by defendant is 20 years. The anticipated operation of the landfill is 20 years.

The case before us was filed by the Tices seeking recovery in a cause of action for nuisance for damages to their property which they allege were caused by the operation of the landfill. The case was tried on special issues to a jury. The special issues and the jury's answers were as follows:

### "SPECIAL ISSUE NO. 1

"Do you find from a preponderance of the evidence that the City of Lubbock in its operation of the landfill in question constitutes a nuisance, as that term is herein below defined, to Lloyd (sic) Tice's property?

"Answer 'Yes' or 'No'.

"ANSWER: Yes.

"By the term 'nuisance', as it applies to this case, is meant any use of property that results in the annoyance or disturbance to another's property rendering

its ordinary use or occupation physically uncomfortable to those who so occupy. Such uses may be polluting of the atmosphere of another's property with noxious or offensive odors, gasses, dust, or debris, thereby producing material discomfort or annoyance to persons of ordinary sensibilities. You are further instructed that a nuisance, if the same exists, is not excused by the fact that it arises from the conduct of an operation that is in itself lawful or useful.

"You are further instructed that as it applies to this case, in arriving at your answer to the above Special Issue, you will not consider any noxious or offensive odors, gasses, dust or debris that may be coming onto the Tice's (sic) property from the roadway in question.

### "SPECIAL ISSUE NO. 2

"From a preponderance of the evidence, if paid now in cash, what sum of money, if any, do you find to be the difference in the market value, if any, as herein below defined, of the Tice property immediately prior to May 17, 1971, and after the beginning of the operation of the landfill by the City of Lubbock?

"Answer in Dollars and Cents, or None.

"ANSWER: $19,400.00.

"By the term 'Market value', is meant what a willing seller, without compulsion to so do, would be willing to sell his property for, and a willing buyer, without compulsion to so do, would be willing to buy said property for within a reasonable time.

"You are further instructed that as it applies to this case, in arriving at your answer to the above Special Issue, you will not consider any noxious or offensive odors, gasses, dust or debris that may be coming onto the Tice property from the roadway in question."

The trial court entered judgment for Tice for $19,400, the amount found by the

jury to be the difference between the market value of the Tice property immediately before the beginning of the operation of the landfill and the value immediately thereafter.

The City appealed, contending that the nuisance, if any, was temporary; that the issues submitted by the trial court were based on the assumption that the nuisance was permanent; and that the trial court erred in submitting the case to the jury as though the nuisance was permanent as a matter of law.

■ The rule is well settled in this state that the measure of damages in case of a permanent nuisance is the depreciation in market value of the property injured, while the measure of damage in case of a temporary nuisance is the depreciation in the market rental value of the property injured, and such other accrued special damages as may be shown. City of Austin v. Bush, 260 S.W. 300 (Tex.Civ.App.—Austin 1924, writ dism'd); City of Temple v. Mitchell, 180 S.W.2d 959 (Tex.Civ.App.—Austin 1944, no writ).

Since the court submitted the case to the jury on the theory of damages applicable to permanent damage by nuisance, it is apparent that the court assumed that the nuisance was permanent. It was held in City of Paris v. Allred, 17 Tex.Civ.App. 125, 43 S.W. 62 (1897, writ ref'd), that it is not error to assume in the charge that the injury, if any, was permanent where the evidence was of such a character as to warrant such an assumption.

■ The standard for evaluating the evidence to determine what constitutes a permanent nuisance was set out by the Supreme Court in Rosenthal v. Taylor, B. & H. Ry. Co., 79 Tex. 325, 15 S.W. 268 (1891) and reiterated in City of Amarillo v. Ware, 120 Tex. 456, 40 S.W.2d 57 (Tex.Comm'n App.1931, opinion adopted), as follows:

"'If it results from a cause which is either permanent in its character or

which is treated as permanent by the parties, it is proper that the entire damage should be assessed with reference to the past and probable future injury.'

"The language quoted is peculiarly applicable to this case. The controlling rule in actions for injuries resulting from similar nuisances would seem to be to adopt in each case that measure of damages which is calculated to ascertain in the most certain and satisfactory manner the compensation to which the plaintiff is entitled. When the injury is liable to occur only at long intervals, or when the nuisance is likely to be removed by any agency, the damages which have accrued only up to the time of the action will be allowed; but if the nuisance is permanent, and the injury constantly and regularly recurs, then the whole damage may be recovered at once. In a case like this the resulting depreciation in the value of the property is the safest measure of compensation. Here it may be inferred from the evidence that the injury recurs upon each considerable rainfall, and continues during a stage of offensive stagnation until the water evaporates. The defendant seems to have treated the work as permanent, since they have failed, upon application, to make a culvert for the passage of the water; and we are of the opinion the depreciation in the value of plaintiff's property is the most certain measure of his damages for the injury."

Applying this standard to the case before us, it is apparent that while the odor from the landfill might vary as the West Texas wind changed, there is no evidence that the nuisance, if there was one, was only occasional or occurred at long intervals.

Appellant City argues that because operation of the landfill is expected to terminate in 20 years and that because at some stage in the operation of the landfill the site of excavations may be expected to be at a point further from the Tice property that the nuisance should be treated as temporary.

■ A similar argument has been made in cases where the nuisance resulted in damage to the fertility of the soil. In those cases it was held that the fact that damages might decrease or cease after a substantial period of time did not keep the damage from being permanent and that therefore the proper measure of damages was depreciation in market value of the land. Damage need not be perpetual in order to be permanent. Lone Star Gas Co. v. Hutton, 58 S.W.2d 19 (Tex.Comm'n App. 1933, holding approved).

■ Viewing the evidence in the light most favorable to appellant City, there is no evidence that the nuisance found by the jury to exist, is anything other than permanent. Thus, the trial court did not err in submitting issues which assumed that permanency or in refusing defendant's related requested issues.

■ Further, the trial court did not err in submitting a single issue of nuisance with appropriate instructions. It has been held that such an issue is neither multifarious nor global. Neuhoff Brothers Packers, Inc. v. McCauley, 399 S.W.2d 929 (Tex.Civ.App.—Waco 1966, writ ref'd n. r. e.).

Appellant next contends that the trial court erred in submitting Special Issue No. 1 arguing that the operation of the landfill as directed by state law cannot constitute a nuisance. Article I, Section 17 of the Vernon's Ann.St., Texas Constitution reads as follows:

"No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made . . . all privileges and franchises granted by the Legislature or created under its authority shall be subject to the control thereof."

■ It has been held many times that the mere fact that an operation is not negligent, is lawful, or was done in a governmental capacity does not deprive the citizen of the right to adequate compensation

**432**

when his property is damaged for a public use. City of Abilene v. Downs, 367 S.W. 2d 153 (Tex.1963); City of Abilene v. Bailey, 345 S.W.2d 540 (Tex.Civ.App.— Eastland 1961, writ ref'd n. r. e.).

■ Appellant asserts a group of contentions based on the theory that because of various defects in the testimony of John Scott, the appraiser who was the only witness who testified to the market value of the Tice property, that there is no evidence to allow the submission of issues to the jury.

Scott is a graduate engineer registered in Texas and New Mexico. He testified that he had been an actual appraiser since 1963 or 1964. He had done 2,000 or 3,000 appraisals on all types of property in and around Lubbock. He was at one time an appraiser for the City of Lubbock. He testified that he was familiar with property similar to that of the Tice property prior to 1971 and had appraised property of all types prior to May 17, 1971. He made an on-the-spot appraisal of the Tice property in May, 1973. The testimony of Mrs. Tice shows that the improvements on the Tice land were completed in 1968. The record reveals no change in the property between the valuation date, and the appraisal date. Scott named and discussed each structure that he valued.

Appellants contend that Scott did not have the knowledge of the land on the date of valuation necessary to support a market value opinion. "The qualification of a witness to testify as to market value of property is largely within the discretion of the trial court, and the appellate court should not disturb the action of the trial court in the absence of a clear abuse of that discretion." Blossman v. State, 482 S.W.2d 937 (Tex.Civ.App.—Corpus Christi 1972, no writ). We are unable to say that the trial court abused its discretion, in the situation presented by the facts in the case before us, in permitting John Scott to testify to the value of the property on the dates in question.

■ After Scott qualified as an expert and testified to the value of the property in question, appellant elicited on cross-examination testimony concerning Scott's knowledge of certain so-called "comparables" or sales of similar property. Scott's knowledge of such sales was hearsay and one sale was of unimproved land which Scott said he considered only for land value. The sales were not offered as direct evidence from which the jury could determine value, but related solely to Scott's knowledge as an expert and the credibility to be given him as a witness. Scott's having once qualified as an expert witness, the evidence went to the weight rather than to the admissibility of his testimony. Hodges v. State, 403 S.W.2d 207 (Tex.Civ.App.— Texarkana 1966, writ ref'd n. r. e.).

■ In submitting the case to the jury the trial court limited the question of nuisance to the operation of the landfill by the City. It specifically excluded odors, gas, dust, or debris that might be coming from the roadway. Contrary to defendant's contention, such issues did not permit the jury to consider the existence of the landfill apart from its operation, the changing characteristics of the neighborhood, or the acts of other persons. There was copious evidence of the source and nature of the odors, dust, and debris from which the jury could determine the extent of the damage occasioned by the elements which they were entitled to consider under the charge. The apportionment of damages can never be exact under such circumstances and the fact that the valuation witness Scott did not attempt to prorate the depreciation of the property in question between that due to the problem of the road and the problem of the dust and odors from the landfill will not preclude the jury from doing so in the light of all of the testimony before it.

■ The trial court did not err in admitting in evidence a motion picture of the scene which appellant contends showed dust and debris and smoke that did not

originate in the landfill. It would be impossible to depict conditions on the property in question without also showing such matters if they exist. We find no error in admitting the motion picture, but if there was error in the admission of this evidence it was not calculated to be prejudicial to appellant or to cause the rendition of an improper verdict in the light of the extensive evidence from other sources concerning the same matters.

We have considered each point raised on appeal and finding no reversible error, the judgment of the trial court is affirmed.