Andrea L. **BATES** et al., Appellant,

v.

**SCHNEIDER NATIONAL CARRIERS, INC.; Atofina Chemicals, Inc. (Formerly Elf Atochem North America, Inc.); Elf Atochem Plating, Inc.; GB Sciences Corporation; Reichhold Chemicals, Inc.; Aluminum Chemical, Inc. d/b/a Coastal Products & Chemical Company; Merisol USA LLC f/k/a Merichem Sasol USA LLC; Ritchie Brothers Auctioneers, Inc.; Ritchie Brothers, Inc.; Jones Chemicals, Inc., Appellees.**

No. 01–00–01132–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 9, 2003.

by TEX. FIN.CODE § 304.102.

---

**18.** *See Cavnar v. Quality Control Parking, Inc.,* 696 S.W.2d 549, 552 (Tex.1985), *superseded*

Allen Eli Bell, Austin, for appellant.

Eleanor Hebert Hodges, James Riley, Michael, Mary C. Thompson, Mark C. Rodriguez, Michael Lamar Brem, Amy Douthitt Maddux, James E. Smith, Marvin B. Peterson, Robert M. Schick, Houston, Scott Boyd Herlihy, Guy M. Hohmann, Austin, for appellees.

Panel consists of Justices NUCHIA and PRICE.[1]

## ORDER ON MOTION FOR REHEARING AND MOTION FOR REHEARING EN BANC

PER CURIAM.

On this date, the Court considered appellant's motion for rehearing and motion for rehearing en banc, and the motions are hereby **denied.**

It is so ORDERED.

The Honorable MARGARET G. MIRABAL, who sat on the original panel for this appeal, retired on Dec. 31,2002, and is participating by assignment in this rehearing.

A majority of the Court voted to deny rehearing en banc.

Justice TIM TAFT joins Justice RADACK'S dissenting opinion from the denial of en banc review.

SHERRY RADACK, Chief Justice, dissenting from denial of en banc review.

The panel opinion in this case determined that summary judgment was improper because the facts create a genuine issue of material fact as to whether the nuisance alleged is permanent or temporary. Because the law governing nuisances is unclear in its present state, I believe that en banc review should have been granted. I conclude that appellants alleged a permanent nuisance, which was subject to an expired two-year statute of limitations, thus precluding their claims. Therefore, I would grant the motion for en banc consideration, reverse the judgment of the trial court, and render judgment against appellants.

I disagree that the trial court erred in rendering summary judgment when it held that there were no genuine issues of material fact. The evidence presented to the trial court in the form of affidavits, I believe, establish that appellants' claims are permanent in nature and in effect. Secondly, I believe that the nuisances alleged are not susceptible to being abated, in itself supports the rendition of summary judgment. In any event, the abatability of a nuisance is only one factor that a court uses to determine the temporary or permanent nature of a nuisance claim.

### Was there a genuine issue of material fact?

The panel opinion concluded that, because there are contradictions within the affidavits, the affidavits raised a fact issue related to whether appellants raised a claim for temporary or permanent damages. I agree with the panel opinion that whether the damages are temporary or permanent in nature may be a fact question for a jury. *See Bayouth v. Lion Oil Co.,* 671 S.W.2d 867, 868 (Tex.1984). But that is not to say it is always a fact question for the jury. In *Bayouth,* the court, in denying the plaintiff's summary judgment, concluded a fact issue was presented because the plaintiff's expert alleged that "the damage was sporadic, intermittent, not constant, and irregular, depending on

1. The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

the rainfall." *Id.* at 869. But, in *Bayouth,* there was no affidavit testimony from the plaintiffs describing the nature of their injuries. Here, when the facts are undisputed as to the nature of the injury, the question of whether the nuisance is temporary or permanent should be decided as a matter of law. *See KPMG Peat Marwick v. Harrison County Fin. Corp.,* 988 S.W.2d 746, 748 (Tex.1999) (holding that summary judgment is appropriate where there is no material fact issue).

Here, it is clear that the subject matter of appellants' claims, found in their own sworn statements, constitute a permanent nuisance and, thus, are barred by limitations. On every occasion in which appellants have described their claims, they have clearly alleged facts that describe permanent injuries. In their petition, and all of their subsequent amendments, appellants alleged

> [t]he interference created by Defendants' conduct is of such a *continuing character and duration* that an ordinary person in the same or similar circumstance would conclude that the Defendants should bear the burden of harm to Plaintiffs and their property because the interference is the inevitable consequence of Defendants' operations at the facilities.

(Emphasis added.)

Further, appellants' affidavits all described identical conditions: "The conditions that have resulted in my claims are *ongoing* and occur frequently"; "Air pollution that has caused my complaints has occurred on *an ongoing basis* since I have lived here"; and "I have been exposed *on a regular basis* to one or more of these substances and possibly others." (Emphasis added.) Other, more individualized statements by various appellants further restate the continuous nature of the nuisance:

- "At nighttime I often had difficulty breathing. I could not spend any time outside and when I did I would get severe headaches.... When I was inside I would keep my windows closed *at all times* to keep the foul odor out."
- "I have a picnic table in the back yard which is *constantly* covered in a black film."
- "I have to keep my windows shut *at all times* and can still sometimes hear the loudspeakers, explosions, and equipment at the plant."
- "We *always* have to keep the windows and doors closed and stay inside because of the foul odors.
- "Since residing in this area, I have experienced *constant* sinus problems. Also, the foul odor *constantly* bothers me."
- "It smells so bad that you cannot sit outside and enjoy it. The dust is also really bad and covers our house and cars *constantly.*"
- "Since residing in this area, I have experienced *constant* sneezing and watery eyes.... My car is *always* dirty and the paint is almost ruined. There is *constantly* dust in my house and I *always* have to oil my furniture."

(Emphasis added.)

Appellants' affidavits consistently use the words "continuing," "ongoing," "constant," and "always" to describe the nature of the nuisance. What is absent from the affidavits is whether the nuisances ever disappear, or are intermittent. The affidavits state that the "air pollution created by defendants' facilities located on or near Haden road occur each time the wind comes from the direction of the industrial plants or facilities and it *is worse* when the wind is out of the south, when conditions are humid, or when it rains." (Emphasis added.) The statement shows that the nuisance is always present, albeit worsened at times by weather conditions. Ap-

pellants' description of appellees' conduct as being of "a continuing character and duration" cannot be more clear. Consequently, these facts allege a permanent nuisance.

As for the appellants' individual claims alleging light and noise pollution, appellants acknowledge that the appellees' operations are continuous, seven days a week, twenty-four hours a day. There exist no allegations in any of appellants' affidavits that the noise and bright lights are intermittent or changeable according to weather conditions. These facts, as they relate to light and noise pollution, are dispositive. They allege a permanent nuisance.

Texas courts have generally held that air pollution from a source in constant operation is a permanent nuisance. *See City of Abilene v. Downs*, 367 S.W.2d 153 (Tex.1963) (odors emanating from sewage treatment plant constitute a permanent nuisance); *City of Lubbock v. Tice*, 517 S.W.2d 428 (Tex.Civ.App.-Amarillo 1974, no writ) (odors emanating from sanitary landfill constitute a permanent nuisance); *Meat Producers, Inc. v. McFarland*, 476 S.W.2d 406 (Tex.Civ.App.-Dallas 1972, writ ref'd n.r.e.) (odors emanating from cattle-feeding operations constitute a permanent nuisance); *contra, Gulf Coast Sailboats, Inc.v. McGuire*, 616 S.W.2d 385, 387 (Tex. Civ.App.-Houston [14th Dist.] 1981, writ ref'd n.r.e.) (odors emanating from fiberglass plant constitutes temporary nuisance).

Appellants rely heavily on *Gulf Coast Sailboats*, but the facts of *Gulf Coast Sailboats* are distinguishable from the facts of this case. In *Gulf Coast Sailboats*, the plaintiffs "alleged that odors and particles produced by [defendant's] fiberglass fabricating operations drifted onto their property [sic] substantially interfering with its use and enjoyment." *Gulf Coast Sailboats, Inc.*, 616 S.W.2d at 386. On appeal, the court stated, "The record reveals that the *presence* of odors and particles complained of depended upon the direction of the wind and other atmospheric conditions and was usually noticeable about three times a week during most of the year and somewhat more often during the summer months." *Id.* at 387 (emphasis added). Based on those facts, the jury found the nuisance to have been temporary. Holding the jury's finding to be supported by the record, the civil court of appeals rejected the defendant's limitations argument. As the quoted passage indicates, in that case, the complained-of conditions were dependent on wind and other atmospheric conditions. In other words, there were times throughout the year in which the plaintiffs *did not* suffer from the nuisance. That situation is not analogous to the facts alleged here. In that case, only one plant was at issue and the conditions were constantly changing, depending upon wind and other atmospheric conditions. The presence of odors and particles complained of in that case depended upon the direction of the wind and other atmospheric conditions and was usually noticeable about three times a week.

Here, this case does not involve a single plaintiff or a single defendant, or a single type of alleged nuisance. Appellants allege appellees' combined emissions of light, noise, chemicals, dust, odors, and other substances have created an ongoing nuisance of constant duration. As appellants themselves state, the complained-of conditions persist at all times, albeit worsened by weather conditions. The evidence presented to the trial court established that appellants' claims are permanent in nature and in effect.

**Were the alleged nuisances abatable?**

Appellants also argue that if the injury-causing activity can be abated, then the nuisance is not permanent. For that position, appellants rely on *Kraft v. Langford*, 565 S.W.2d 223, 227 (Tex.1978). *Kraft*

states that one *characteristic* of a temporary nuisance is its abatability. *Id.* The panel opinion expressed doubt about drawing the distinction between temporary or permanent nuisances based on the general principle that, if a nuisance can be abated, it must be temporary. The panel opinion went on to state that it must follow the *Kraft* decision (apparently because one characteristic of this case is its ability to be mitigated by a court of equity). I do not believe that whether a nuisance is abatable is outcome determinative in this case.

When, as here, there is no dispute that the alleged nuisance is continuous and on-going, the ability to abate the nuisance should not make an otherwise permanent nuisance into a temporary one. Even after considering, for sake of argument, whether the otherwise permanent nuisance in this case is abatable, I conclude that it would be very difficult for a court of equity to abate the nuisance because of the breadth of the remedy sought by appellants.[1] Appellants' expert proposed measures to stop the nuisance that were comprehensive and all encompassing. If implemented, the proposed measures could conflict with federal laws and regulations relating to appellees' operations. Because of the difficulty inherent in abating the alleged nuisance in this case, I believe that, to the extent abatability is used as a factor to determine whether a nuisance is temporary or permanent, it supports appellees' contention that the nuisance complained of is permanent in nature.

Further, I do not believe the *Kraft* court would reach a decision contrary to the one made by this trial court. The breadth of appellants' complaint is simply not, at least as far as abatability is concerned, comparable to the one complained of in *Kraft.* As appellees correctly point out, appellants' expert, were his suggestions to be instituted, in order to make the nuisances alleged by appellants abatable, would seek to have the trial court restructure already heavily regulated operations of the appellees so extensively that it could circumvent governmental regulatory schemes with jurisdiction over appellees. I agree with appellees that the alleged need for such a comprehensive restructure of appellees' operation of permanent industrial facilities supports the determination that the alleged nuisance is permanent in nature. *Kraft* does not suggest anything to the contrary.

For the foregoing reasons, I conclude appellants alleged a permanent nuisance, which is subject to a two-year statute of limitations. I would grant the motion for en banc consideration and affirm the trial court and render judgment against plaintiffs.

The Honorable MARGARET G. MIRABAL, who sat on the original panel for this appeal, retired on Dec. 31, 2002, and is participating by assignment in this rehearing.

Justice TIM TAFT joins Chief Justice RADACK'S dissenting opinion from denial of en banc review.

---

1. Appellants are seeking to make changes to the way that appellees do business, including but not limited to: the design, construction, and operation of the facilities; the operating procedures at the facilities; the equipment used in the facilities; the maintenance procedures for the equipment; methods of chemical disposal at the facilities; the emissions safeguards that are employed; the nature of the manufacturing processes; the procedures for controlling unit upsets; and employee-training protocol.